## YOUNGE v. HARRIS' ADMINISTRATOR, ET AL.

1. Where one was induced to purchase land by the fraudulent representations of the vendor, in relation to the title, the falsehood of which the vendee had no means of ascertaining, by the exercise of ordinary diligence, he may have relief in Chancery before eviction, and without abandonment of possession.

Error to the Chancery Court, sitting at Cahawba.

THIS was a bill in Chancery, filed by the plaintiff in error, originally in the Circuit Court of Dallas County, and afterwards transfered to the separate Chancery Court at Cahawba, against Bernard Johnson, Administrator of Winfield Harris and Hugh Younge.

The bill alledges that the complainant purchased of Harris, the north east quarter of section number seventeen, in township fifteen, of range seven, of the lands sold at Cahawba, about the 17th of April, 1833, at the price of eight hundred dollars, and executed his notes for the purchase of money, two of which, for two hundred dollars each, were payable in about one year thereafter, and one for four hundred dollars, payable in about two years after. That, Harris pretended he had a title in fee simple to the land, and executed to the complainant a bond in the penal sum of sixteen hundred dollars, with condition to make him a title thereto, on the payment of the purchase money. That on the execution of the notes and bond, he went into possession of the land, and still is in possession. That at the time of the purchase, he was a stranger in the country, and soon after taking possession, heard a rumor in the country, that the land he had purchased belonged to an infant son of Harris; and on going to the land office at Cahawba in May 1833, he there learned from the Register, for the first time, that the east half of the quarter section was entered in the name of Horatio P. Harris, an infant son of the vendor; but was induced by the Register to believe, that the west half was entered in the name of, or belonged to Winford Harris; but at the same time, told complainant, that Harris was in his,

the Register's debt, and that, if complainant would pay him one of the notes for two hundred dollars, that the west half of the quarter section could come out in his name. That afterwards, in April 1834, the Register presented to complainant the receipt of the Receiver of Public Monies at Cahawba, for the said west half quarter, in the name of complainant, with one of the notes complainant had executed to Harris, for two hundred dollars, which complainant paid to him. Copies of the note and receipt of the Receiver, are annexed to the bill as exhibits. He alledges that the presentation by the Register of the receipt of the Receiver, was the first information he had, that the west half of the land had not been entered by Harris; and he charges that at the time of the sale to him, it was vacant and unentered.

That he immediately called on Harris, and proposed to him to rescind the contract, which he refused to do. He alledges that the west half is barely worth the two hundred dollars he paid the Register for it; and offered at the time to deliver it up if he would pay him his money. That the east half is valuable, and worth more than six hundred dollars. That in April 1834, Harris commenced a suit on the remaining note, for two hundred dollars. That Harris is since dead, and administration on his estate, been conferred on Bernand Johnson; that since the death of Harris, he has been informed, that the remaining note of four hundred dollars, has been transferred to one Hugh Younge. That since the death of Harris, the proposition has been renewed to the administrator of Harris, to rescind the contract which he refused. That the estate of Harris is wholly insolvent. Complainant still offers to comply with the contract on his part, if a good title can be made to him, and prays a recision of the contract, and for general relief.

To this bill, Johnson answered and admitted, that his intestate sold the land, and executed the title bond as stated in the bill; but denies all knowledge of any representations as to his title. He admits that the east half of the quarter was entered in the name of the son of the deceased, but believes that the money was furnished by the father, who was then much in debt. As to the west half, he says that Harris had deposited with Saltmarsh, the Register, a part of the money, and a due-

bill given for the residue; and by a friendly arrangement between Harris and the Register, the certificate, whenever the land was sold by Harris, was to be filled up to the purchaser; and says that a blank certificate was issued by the Register for the land. Admits that a proposition was made to him to rescind the contract, which he declined. Admits also that the estate is insolvent.

On the 25th February, 1836, the complainant filed a supplemental bill, stating that, since filing the original bill, he has learned more certainly, that the note for four hundred dollars was transferred by Harris to Hugh Younge who had commenced suit thereon, and had since departed this life, and that one Thomas Dickson has become his administrator. That Johnson had reported the estate of Harris insolvent to the Orphans' Court of Dallas county, and that about the month of February, 1835, he abandoned the possession of the east half of the quarter section. Thomas Dickson is also made a defendant to the bill. The evidence supported the allegations of the bill.

J: B. CLARKE, for the plaintiff in error, cited—1 Story's Eq. 198, 200; 2 J. C. Rep. 519; 1 Stew. & Por. 107; 5 Lettell's Rep. 8; 6 Har. & John. 534; 4 Mass. 414; 4 Bibb, 7; 3 ibid. 442; 2 Littell, 82; 1 Mass. 230; 3 Munford, 68; 2 Story's Eq. 6, 47; 3 Stewart, 233; 1 Peters', 468 : 3 Marshall, 574, 5.

EDWARDS, for defendants, insisted, that the contract could not be rescinded in part. Chitty on Con. 275; Come on Contracts, 39.

That complainant had a remedy at law. 2 Stewart, 331.

That, as complainant retained possession of the land at the time of filing the bill, he could not defend either at law or in equity. 4 Porter, 84; 3 S. & P. 431; ibid. 101, 103, 155; 1 ibid. 490; 9 Porter, 434; 1 John. Rep. 213, 218.

ORMOND, J.—The argument of the counsel for the defendant in error, is, that the plaintiff in error is not entitled to a decree rescinding the contract, because he has not been evicted, nor abandoned the possession of the land. The decisions of this Court are uniform on this subject, when the question has arisen at law—that the vendee, while he retains the possession, cannot refuse to pay the purchase money; otherwise, it might

happen, that he would get the land without paying for it, as a Court of law, could exact no conditions from him, as the price of affording its aid. But in a Court of Chancery, where the rights of the parties can be accurately adjusted, no reason is perceived why the vendee, who has been induced, by the fraudulent representations of the vendor, to invest his money in the purchase of land, should be required, as a prerequisite to relief in equity, to relinquish the possession of the land, and with it, it may be, his only hope of reimbursing himself. This point has not before been presented in this Court; but we hesitate not to say, that where one by the fraudulent silence, or fraudulent representations of another, in relation to material facts concerning the title of land, the falsehood of which he had not the means of ascertaining, and could not have ascertained by reasonable diligence, is induced to invest his money in the purchase of land, or has made on the faith of such purchase, valuable and lasting improvements, he can have relief in Chancery before an eviction, and without abandonment of the possession.

This point was thus ruled, in the case of Edwards v. McLeay, 1 Cooper Select Cases, 308. That was the sale of a dwelling house in Clapham, in which it was afterwards discovered, that the coach house and stables, a part of the Court and driving way leading up to the house, were situate on Clapham Common. The vendor knew of this defect in the title of the premises, and did not disclose it to the vendor. The bill was filed for the purpose of setting aside the sale, and getting back the purchase money. Sir William Plumer, the Master of the Rolls, in the course of his able opinion, says : " Whether it would be a fraud to offer, as good, a title which the vendor knew to be defective in point of law, it is not necessary now to determine ; but if he knows and conceals a fact material to the validity of the title, I am not aware of any principle on which relief can be refused to the purchaser." What then is the case made by this plaintiff ? He asserts, that the vendors knew that the part in question, was an enclosure from the Common ; that they did not disclose the fact to him, and that he could not discover it from the abstract. He also ' asserts, that this part of the purchased premises, is material to the con-

venient enjoyment of the rest. The defendants admit they did make such a representation as is stated, with respect to the whole of the premises, they denying that any part of the premises is on the common; and, if such is the fact, deny their knowledge of it."

An examination of the evidence having resulted in satisfying the Master of the Rolls, that the facts were as stated in the bill, he proceeds to say, "the only other objection the defendants make to the relief sought by the bill, is, that the plaintiff is premature in his application, inasmuch as he has not yet been evicted, and may, perhaps, never be evicted. But I apprehend that a Court of equity has quite ground enough to stand upon, and that it ought now to relieve the plaintiff from the consequences of the fraud practiced upon him." He answers the objection, that the Commoners were barred, and that the Lord might never assert his right, by saying, "though the Lord may never assert his right, is the plaintiff to be compelled to remain for twenty-five years longer in a state of uncertainty, whether on any day during that period, he may not have the convenience of his habitation entirely destroyed? I apprehend that the Court is bound to relieve him from that state of hazard into which the misrepresentations of the defendant has brought him."

Lord Eldon, on appeal, affirmed the decree. He said, "he knew of no such decision, but that if one party makes a representation which he knows to be false, the falsehood of which the other party has no means of ascertaining, a Court of equity will rescind the contract. [2 Swanston's Rep. 303.]

The case just cited, resembles this in every important particular. It was proved by the subscribing witness to the bond given for title, and who was present when the land was sold, that, in answer to a question put by the defendant in error, in relation to the title, the vendor said that the titles were at his own house, where the plaintiff could get them, or see them at any time. The plaintiff was a stranger in the neighborhood; and the witnesses who were examined, and who lived in the neighborhood, did not know that the title was not in the vendor, who was in possession. The fact was, that at the time of the sale, the title to the west half of the quarter section, which

was then sold, was in the United States, and the east half had been entered in the name of an infant son of the vendor.

It is true, that an examination of the land office would have disclosed the true state of the title : but as there was no fact or circumstance disclosed, which was calculated to induce a doubt of the title of the vendor, or put the plaintiff on enquiry, such extreme diligence cannot be exacted. He cannot be censured for relying on the representations of the vendor as to the title, when no circumstance had transpired which should have aroused his suspicions. As soon as a rumor reached him, that the vendor had not title, he examined the land office, and ascertained the fact. He then proposed to rescind the contract, on being paid the money he had paid on the contract, and on the refusal of the vendor to comply with this request, his right to apply to a Court of equity for relief, was perfect.

It was argued by the counsel for the defendants in error, that the vendor could not be called on to make title, until the period, stipulated in the bond, arrived. There might be some force in this objection, if the title had been where he could acquire it; but being in an infant, who could make no title, the vendee could not be required to wait, in a state of uncertainty, the possible event of the title being obtained when the infant attained his majority, unable in the mean time, to make with safety, any valuable or lasting improvement, and finally perhaps, to lose both his land and money. If a Court of Chancery has no power to interpose and prevent such a result as this, it must sit to very little purpose.

No notice has been taken of the fact, insisted on in argument by the plaintiff's counsel, that the west half of the quarter section, was, in fact, purchased from the United States, with the money paid by the plaintiff on the contract, as it does not affect the result.

Nor is it material, whether the defendant, Younge, had notice of the facts, when he took an assignment of the note for four hundred dollars from the vendor, as he is affected by any equity which exists against his assignor.

The decree of the Court below, therefore, dismissing the bill, is reversed, and this Court proceeding to render such decree as the Court below should have rendered, hereby order, ad-

judge and decree, that a reference be made to the master, to state an account between the parties, allowing the complainant interest on the money paid, and a suitable allowance for valuable and lasting improvements, made by him on the premises, and charging him with the value of the use and occupation of the land. That the west half of the quarter section, described in the bill, be sold, and that the complainant be paid out of the proceeds; and if the sale does not yield a sufficient sum, the residue to be paid by the estate of the vendor. That the notes for four hundred dollars, and two hundred dollars given by the complainant on the purchase of the land, be delivered up and cancelled; and that the complainant have a lien on the west half of the quarter section, for the money paid by him.

Let the cause be remanded for further proceedings, in conformity with this decree.