DRAKE v. NUNN et al. (8 Div. 413.)

(Supreme Court of Alabama. April 19, 1923. Rehearing Denied June 30, 1923.)

1. Fraud ☾⟶16—One selling contract for purchase of land held not guilty of deceit with respect to incumbrances.

A vendee without knowledge of incumbrances on record, who merely sold to plaintiff his contract for the purchase of the land from defendant, who concealed the existence of the incumbrances in reselling the land to plaintiff, held not guilty of deceit with respect to the incumbrances; the rule of caveat emptor being applicable to plaintiff so far as the vendee was concerned.

2. Covenants ☾⟶6—Where deed placed in escrow is not delivered, no cause of action can result from breach of covenants contained therein.

Where a deed delivered to a bank to be held in escrow for the purchaser of realty was never delivered due to the purchaser's discovery of false representations by the vendor, held the deed did not become operative and that no cause of action in favor of the purchaser accrued by reason of the covenants of the deed.

3. Fraud ☾⟶16—Failure of vendor of personalty to disclose want of title actionable deceit.

The vendor of personal property owes to the vendee the duty of disclosing to him any fact unknown and not apparent which would impair the vendor's title, and failure to make such disclosure is actionable deceit.

4. Fraud ☾⟶16—Vendor and purchaser ☾⟶37 (7)—Failure of vendor under executory contract to disclose incumbrances not actionable.

Where land contract is executory, the purchaser having parted with nothing of value, the agreement to convey at a future time is consistent with an intention to procure a release of outstanding incumbrances, or to cure existing defects in title, and the existence of such incumbrances or defects, though not disclosed to the purchaser, is not a fraud upon him and will not support an action for deceit or justify rescission.

5. Fraud ☾⟶16—Vendor's failure to disclose incumbrances on payment by purchaser actionable.

Where, at the time of contracting, the purchaser, in reliance upon implied representations

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

☾⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of the vendor that title is, as to his own acts, good and unincumbered, pays all or any part of the consideration, he may thereafter maintain an action for deceit founded upon the vendor's failure to disclose the existence of defects or incumbrances created by himself, nor is the breach of this duty to disclose by the vendor offset and avoided by the failure of the purchaser to wait and examine the records before making the payment.

**6. Fraud ⬤☞64(5)—Deception by concealment of incumbrances held for jury.**

In an action for vendor's deceit in failing to disclose incumbrances, whether plaintiff was in fact deceived *held* for the jury.

**7. Fraud ⬤☞59(1) — Measure of damages for deceit as to incumbrances stated.**

Where a contract for the sale of realty has been fully executed, the measure of damages for deceit of the vendor as to incumbrances is the difference in value of the land with and without the incumbrances or the necessary cost of their removal, if removed.

**8. Vendor and purchaser ⬤☞334(1) — Upon abandonment of contract, purchaser may recover payments made.**

Where evidence establishes mutual inability of vendor and purchaser to complete a contract for the purchase of realty, and the contract is abandoned, the purchaser may recover from the vendor any payment made.

**9. Vendor and purchaser ⬤☞170, 339—Ordinarily purchaser must make tender.**

Ordinarily, the purchaser can put the vendor in default only by tendering full performance on his own part, and demanding performance by the vendor; but when it is apparent that tender and demand will be unavailing, as where the vendor puts himself in a position in which performance is impossible, offers a defective title, or is unable to perform, a formal tender and offer of payment and demand of deed by the purchaser is not necessary to entitle him to recover back what he has paid under the executory contract.

**10. Vendor and purchaser ⬤☞339—Mere defect of title does not dispense with tender by purchaser.**

Mere defect of title in the vendor and a present inability to give such a title as he covenants to do in a bond for title does not, in all cases, dispense with payment of the entire purchase money and demand by the purchaser of a conveyance, to entitle the latter to recover back the purchase money already paid.

**11. Vendor and purchaser ⬤☞339—Showing that vendee would have received title if he had paid full purchase money, defeats action to recover part of purchase price paid.**

In purchaser's action to recover part of purchase money paid, where there is no proof of tender of purchase money and demand for conveyance, and it is shown that, notwithstanding infirmity of title in the vendor, if the purchase money had been paid, the purchaser could and would have obtained a title conforming to the covenant, the plaintiff cannot recover.

**12. Vendor and purchaser ⬤☞341(4)—Question of vendor's default excusing purchaser's tender held for jury.**

In purchaser's action to recover payment made, whether vendor was in default in failing to perfect title so as to excuse purchaser from making tender of the balance of the price *held* for the jury.

On Rehearing.

**13. Pleading ⬤☞182—Pleas confessed by failure to reply.**

Where plaintiff replied specially to certain pleas, but there was no formal written plea of the general issue to other pleas, these latter pleas must be taken as confessed.

**14. Appeal and error ⬤☞662(2)—Recitation in judgment entry held to preclude taking certain pleas as confessed.**

A recitation in a judgment entry that issue has been joined on certain counts conclusively precludes an assertion that certain of such counts were confessed.

**15. Pleading ⬤☞418(3)—Plea, though immaterial as to some counts, of complaint, if proved on issue joined after demurrer overruled, entitles defendant to general affirmative charge.**

Where a plea, to which plaintiff's demurrer has been overruled, is fully and completely proven without dispute, then, no matter how immaterial the plea may have been as to some of the counts of the complaint, plaintiff's joinder in issue thereon entitles defendant to the general affirmative charge.

**16. Trial ⬤☞141—To warrant general affirmative charge upon proof without dispute of immaterial plea, every allegation of the plea must be proven.**

A litigant, in order to avail himself of the rule entitling him to the general affirmative charge on proof without dispute of even an immaterial plea, must strictly comply with the rule and prove every allegation of the plea.

Appeal from Circuit Court, Madison County; Robert C. Brickell, Judge.

Action by F. M. Drake against J. E. Nunn and Dan Osborn. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

The primary facts upon which the plaintiff, Drake, grounds his right of action are as follows:

The defendant Nunn owned 160 acres of farm land which he sold to the defendant Osborn in the summer of 1919, for $16,000. Osborn paid $2,000 in cash, and Nunn made a deed to him which was placed in escrow with the Huntsville Bank & Trust Company, to be delivered to Osborn upon the latter's payment to the bank of the balance of $14,000 on or before January 5, 1920.

Thereafter, in September, 1919, on the suggestion of either Nunn or Osborn, Drake agreed with them to purchase the land; his undertaking being to pay Osborn $2,500 for his contract with Nunn, of which $2,000 was

⬤☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to reimburse Osborn for cash purchase money paid to Nunn, and $500 was for profit to Osborn.

On his part, Nunn gave to Drake an instrument in writing, acknowledging receipt of $2,000 from Drake as part payment on the land sold to him, as shown by the deed contemporaneously deposited with the bank— which deed was to be delivered by the bank to Drake provided, on or before January 5, 1920, Drake paid over to the bank $14,000 in cash, or else at his option, paid over $5,000 in cash, and executed and delivered to the bank his note and mortgage for $9,000, payable in one year, at 8 per cent. covering the land purchased. A further stipulation was that if Drake should fail to take up the escrow deed as stipulated, on or before January 5, 1920, he would forfeit to Nunn the cash payment of $2,000 as liquidated damages.

Theretofore, in 1917, Nunn had executed a mortgage, including this and other lands, to the Chickamauga Trust Company, securing a debt of $34,000, $30,000 of which remained unpaid; and in 1918 he had executed a second mortgage on this and other lands to I. Schiffman & Co., securing a debt of $56,500. Both of these mortgages had been duly recorded, and stood thus on the record of mortgages.

Drake had no knowledge nor notice of the existence of either mortgage, and the evidence does not indicate that Osborn knew of this existence. The defendant Nunn did not disclose the fact of their existence to Drake during their negotiations, nor at nor prior to the time of making the contract of sale with Drake when he paid the $2,500 to Osborn; but Nunn made no representations on the subject, and did nothing to actively deceive or mislead Drake in respect thereto.

Drake testified that he first learned of the existence of the Chickamauga Trust Company's mortgage in a conversation with Nunn about December 1, 1919, and that Nunn then told him he would have to get it released before he could let him (Drake) have the place. Drake then examined the records and saw the record of the mortgage. This mortgage, as the record shows, was transferred by the mortgagee to State Life Insurance Company of Indiana, in October, 1917. Drake did not learn of the existence of the Schiffman mortgage until January 7, 1920.

Drake testified further:

"A few days * * * before the 5th of January I talked with Nunn and told him I would be here on the 5th, and he told me that he would also be here, and that he was ready to take the matter up and give the deed. He did not say anything about the release that day, but had told me before that day that he would have it here (in Huntsville)."

Plaintiff stated his case in twelve counts, the first four of which were the common counts.

Counts 5, 6, and 12, to which demurrer was sustained, charge deceit and fraudulent concealment.

Count 7 declares for deceit in the sale of lands, "which the defendants represented to plaintiff as being free of incumbrance and said defendants knew at the time of said sale to plaintiff that said land had been mortgaged to others to secure the sum of $87,500, which defendants knew was not paid," etc.

Count 8 claims damages for that defendants sold to plaintiff the lands in question for the sum of $16,500 "and defendants fraudulently represented to plaintiff that said lands were free of incumbrance and deceived plaintiff by concealing from him the fact that at the time there were two mortgages" thereon which "defendants knew at the time were not paid or satisfied"; that Nunn executed a deed to plaintiff, covenanting that he had a good right to sell the lands in question free of incumbrance "which defendants knew at the time was untrue"; the plaintiff was induced to pay to Osborn the sum of $2,500; that the deed was placed in escrow with the bank, to be delivered when plaintiff performed the conditions agreed on or before January 5, 1920; that thereafter plaintiff learned of the existence of the mortgages, which defendants promised to have released on January 5, 1920, but that defendants failed to secure such release, etc.

Counts 9, 10, and 11, to which demurrer was sustained, declare upon a breach of the covenant of warranty contained in the deed executed by Nunn to plaintiff.

Defendants plead non debitat, the general issue, and special pleas 3 to 9, inclusive. The third plea avers that after the transaction between Nunn and Osborn, the latter sold to Drake under the circumstances shown; that the two came to Nunn with a request for the substitution of Drake for Osborn; that Nunn "for the accommodation of the said Drake and Osborn agreed to this," and executed a deed conveying the lands to Drake together with an agreement by which Drake was to pay the balance of $14,000 on or before January 5, 1920, or $5,000 cash on that date, the remainder secured by mortgage, one year from date. The plea sets up as matter of avoidance that Drake failed either to pay the entire amount due or to pay $5,000 and deliver a mortgage for the balance. The other pleas set up in defense that Drake did not pay or offer to make payment to the bank on or before the date stated; that Nunn was ready, able, and willing to perform, and Drake did not make tender as agreed; that it was agreed Nunn should discharge the lien of the mortgage after Drake had performed; and that he had been ready, able, and willing to so discharge, etc.

J. H. Ballentine, of Huntsville, for appellant.

A buyer may rescind a contract of sale for fraud of the seller, or breach of warranty, and recover the consideration paid. McCoy v. Prince, 11 Ala. App. 388, 66 South. 950; Id., 197 Ala. 665, 73 South. 386; Orendorff v. Tallman, 90 Ala. 443, 7 South. 821; Code 1907, §§ 4298, 4299. An action for deceit may be maintained by a purchaser of real property for fraudulent misrepresentations as to title, and a contract induced thereby cannot be effectually ratified until the ratifying party has knowledge of the facts. 20 Cyc. 89; Sou. L. & T. Co. v. Gissendaner, 4 Ala. App. 523, 58 South. 737. In the sale of real estate a good and indefeasible title is presumed as a matter of law. Flinn v. Barber, 64 Ala. 193; 39 Cyc. 1441; Goodlett v. Hansell, 66 Ala. 156; B. L. & L. Co. v. Thompson, 86 Ala. 150, 5 South. 473; Consumers' Co. v. Yarbrough, 194 Ala. 488, 69 South. 897; Corry v. Sylvia, 192 Ala. 550, 68 South. 891, Ann. Cas. 1917E, 1052; Taylor v. Newton, 152 Ala. 465, 44 South. 583. Concealment of incumbrances will constitute fraud and misrepresentation, although such incumbrances are recorded, and recovery may be had on common counts. 39 Cyc. 1278, 2005; Linn v. Green (C. C.) 17 Fed. 407; Hawkins v. Merritt, 109 Ala. 261, 19 South. 589. No performance, tender, or demand on the part of the purchaser is necessary, where the vendor is clearly unable to perform his part of the contract. 39 Cyc. 2089; Read v. Walker, 18 Ala. 323; Smith v. Robertson, 23 Ala. 316; Lanier v. Hill, 25 Ala. 559.

R. E. Smith and White & Watts, all of Huntsville, for appellees.

There can be no fraud, without the misrepresentation of an existing fact, or something equivalent thereto. Crown v. Carriger, 66 Ala. 590; Bomar v. Rosser, 131 Ala. 215, 31 South. 430; Munroe v. Pritchett, 16 Ala. 785, 50 Am. Dec. 203. Mere silence is not equivalent to actual misrepresentation, unless there is a duty to disclose the truth, and unless the party to whom the duty of disclosure was due was induced thereby to act to his injury. Nat. Park Bank v. L. & N. Ry., 199 Ala. 192, 74 South. 69; Hall v. Western Assurance Co., 133 Ala. 637, 32 South. 257; Bradfield v. Elyton Land Co., 93 Ala. 527, 8 South. 383. If it was a fact equally open to inquiry by both parties, and nothing was done to prevent, or obstruct, or lull inquiry, the vendee is not entitled to recover on the ground of fraud. New Orleans Co. v. Musgrove, 90 Ala. 428, 7 South. 747; Rarden v. Badham, 142 Ala. 500, 38 South. 1029; 39 Cyc. 1256. Where the plaintiff fails to join issue on a special plea, to which there is no replication, such plea is confessed, and need not be proved. Williams v. Holder, 202 Ala. 652, 81 South. 608; Grasselli Chemical Co. v. City Ice Co., 200 Ala. 172, 75

South. 920; Miller v. Johnson, 189 Ala. 354, 66 South. 486; 31 Cyc. 678. In an action for breach of a dependent covenant, the plaintiff cannot recover without actual or tendered performance, or a readiness and ability to perform, and an allegation to that effect must be made in the complaint and it must be supported by proof. Moss v. King, 186 Ala. 475, 65 South. 180; Terrell v. Nelson, 177 Ala. 596, 58 South. 989; Brady v. Green, 159 Ala. 482, 48 South. 807; Pate v. McConnell, 106 Ala. 449, 18 South. 98.

SOMERVILLE, J. [1] It is clear that there is no foundation in the evidence for any recovery, under any count of the complaint, against the defendant Osborn. He merely sold to plaintiff his contract for the purchase of the land from the defendant Nunn, and he was guilty of no deceit, either actively or passively, with respect to the incumbrances complained of; nor was he guilty of any breach of warranty or of contractual obligation. So far as he was concerned, the rule of caveat emptor must be applied to plaintiff.

[2] The evidence shows without dispute that the deed made by Nunn to plaintiff, and placed as an escrow with the Huntsville Bank, to be delivered upon plaintiff's compliance with the conditions of the contract of sale, was never delivered and never became operative as an executed conveyance, and therefore no action could lie for the breach of any of its covenants.

Plaintiff's right of action against Nunn, if any, must be grounded on one of two propositions: (1) Deceit in not disclosing the existence of the outstanding incumbrances; or (2) breach of the executory contract of sale in not removing the incumbrances, or in not being able, ready, and willing to do so whenever plaintiff, being himself able, ready, and willing, offered performance on his part, on or before January 5, 1920.

[3] It is the settled law of this state that the vendor of personal property owes to the vendee the duty of disclosing to him any fact, unknown and not apparent to him, which would impair the vendor's title; and the failure to make such disclosure is an actionable deceit. Corry v. Sylvia Y Cia, 192 Ala. 550, 68 South. 891, Ann. Cas. 1917E, 1052. The same principle is here invoked as to a sale of land, where there were outstanding incumbrances, apparent upon the mortgage records, which were accessible to the vendee's inspection had he chosen to wait and examine them.

It is perhaps impossible to deduce from our decisions on this subject a rule which is entirely harmonious with all that has been written. See Younge v. Harris' Adm'r, 2 Ala. 108; Steele v. Kinkle, 3 Ala. 352; Cullum v. Branch Bank, 4 Ala. 21, 37 Am. Dec. 725; Van Arsdale v. Howard, 5 Ala. 596;

Morgan v. Patrick, 7 Ala. 185; Bryant's Ex'r v. Boothe, 30 Ala. 311, 315, 68 Am. Dec. 117; Jordan v. Pickett, 78 Ala. 331, 338; Meeks v. Garner, 93 Ala. 20, 8 South. 378, 11 L. R. A. 196; Hawkins v. Merritt, 109 Ala. 261; 19 South. 589; Rarden v. Badham, 142 Ala. 500, 38 South. 1029; Corry v. Sylvia Y Cia, 192 Ala. 550, 68 South. 891, Ann. Cas. 1917E, 1052; Consumers' C. & F. Co. v. Yarbrough, 194 Ala. 482, 69 South. 897.

[4] But on principle, and in substantial harmony with our best-considered cases, we are constrained to hold that, where the contract for the sale of land is executory on both sides—the purchaser having parted with nothing of value—the agreement to convey at a future time is consistent with an intention to procure a release of outstanding incumbrances, or to cure existing defects of title, and the existence of such incumbrances or defects, though not disclosed to the purchaser, is not a fraud upon him and will not support an action for deceit, nor justify a rescission of the contract. In such a case the vendor may honestly intend to remove the incumbrances or cure the defects in due season to convey a good title to the purchaser when the latter, by his own seasonable offer to perform, entitles himself to demand it. Blanks v. Walker, 54 Ala. 117; Pate v. McConnell, 106 Ala. 449, 453, 18 South. 98; Cullum v. Branch Bank, 4 Ala. 21, 35, 37 Am. Dec. 725. In Cullum v. Branch Bank, supra, the Court said:

"Indeed, by offering to sell an estate, the vendor virtually represents it as not incumbered by himself, or, if incumbered, he will free it before the sale is executed."

This, we think, is the extent of his obligation and liability.

[5] But where, at the time the contract of sale is made, the purchaser, relying upon the vendor's implied representation that the title is, as to his own acts, good and unincumbered, pays all or any part of the consideration, he may maintain an action for deceit, founded upon the vendor's failure to disclose the existence of defects or incumbrances created by himself, as it was his duty to do. Morgan v. Patrick, 7 Ala. 185; Younge v. Harris' Adm'r, 2 Ala. 108, 110.

The breach of the duty of the vendor to disclose was not offset and avoided by the failure of the purchaser to wait and examine the records before making the cash payment required. As said in Younge v. Harris' Adm'r, supra:

"It is true, that an examination of the land office [mortgage records here] would have disclosed the true state of the title; but as there was no fact or circumstance disclosed, which was calculated to induce a doubt of the title of the vendor, or put the plaintiff on inquiry, such extreme diligence cannot be exacted."

That case was a bill in equity for rescission because of fraud and deceit by non-disclosure.

In Camp v. Camp, 2 Ala. 632, 636 (36 Am. Dec. 423) it was said:

"But the law is not so destitute of morality, as not to require each of the contracting parties to disclose to the other all material facts, of which he has knowledge, and of which he knows the other to be ignorant, unless they are open to *common observation;* and not to forbid any intentional concealment, or suppression of the material facts necessary to be known, and to which the other has not equal access, or means of ascertaining." (Italics ours.)

Manifestly, the record of such an incumbrance, though accessible to a purchaser, is not one of those facts so open to common observation as to place the parties in an equal position of knowledge and responsibility.

The case of Rarden v. Badham, 142 Ala. 500, 38 South. 1029, was a bill in equity for the rescission of a contract for the purchase of land, on the ground that the vendor did not have a complete title at the time of the sale. The defect was that Badham, the vendor, had not paid all the purchase money to his own vendor, and had not received a deed of conveyance—facts not disclosed to the purchaser. Badham showed in his answer, however, that he was able to pay the purchase money installments as they fell due, and offered to execute a sufficient bond to protect the purchaser. Pursuant to the decree of the trial court he did execute the bond; and, finding no fraud in the transaction, and holding that the purchaser should have investigated, and should be presumed to know, the state of the title in general, the decree denying relief was affirmed. That case, therefore, does not come within the principle of the instant case, and is not in conflict with what we have written.

It is not necessary to review the rulings of the trial court in sustaining demurrers to counts 5, 6, and 12 of the complaint, since those counts were for deceit by concealing the existence of mortgages on the land, and under counts 7 and 8, to which the demurrers were overruled, plaintiff had full advantage of that aspect of his case.

[6] Under counts 7 and 8 it was, under all the evidence, a question for the jury to determine whether plaintiff was in fact deceived and defrauded by the defendant Nunn's nondisclosure of the existence of the outstanding mortgages. If they found that he was, they could award damages only for such injuries as were suffered by him before he was informed of the mortgages—and, under the evidence, the only recoverable damage would have been for the loss of $2,000, paid to Osborn as part of the purchase money.

So far as Nunn's liability for deceit is concerned, it is of no importance that Drake paid the $2,000 to Osborn instead of to Nunn. The legal effect of the joint transactions shown between Nunn and Osborn and

Drake was the return to Osborn of his advance payment, and the payment of the same amount by Drake to Nunn. At any rate, the payment by Drake was knowingly induced by Nunn's conduct amounting in law to deceit.

[7] If the contract of sale had been fully executed, instead of being abandoned, it may be conceded that the proper measure of damages would have been the difference in the value of the land with and without the incumbrances, or the necessary cost of their removal, if removed. See Tillis v. Smith Lbr. Co., 188 Ala. 122, 65 South. 1015. But that rule is not applicable here. We think the trial court was in error in not submitting to the jury the question of the defendant Nunn's liability for deceit.

[8] The complaint exhibits no count declaring upon a breach of Nunn's executory contract to convey the land. But, where the evidence establishes a breach by the vendor, or mutual inability to perform at the time when performance was due, and the contract is abandoned, the purchaser may recover from the vendor any payment of money that he has made under the contract. 29 Am. & Eng. Ency. Law (2d Ed.) 727 (2); Maddera v. Smith, 3 Stew. 119; Waters v. Spencer, 22 Ala. 460; Flinn v. Barber, 64 Ala. 193. And such a recovery may be had under the common counts, as those cases show.

[9-11] Ordinarily, the purchaser can put the vendor in default only by tendering full performance on his own part, and demanding performance by the vendor; but—

"when it is apparent that tender and demand will be unavailing, as where the vendor * * * puts himself in a position in which performance is impossible, offers a defective title, or is unable to perform, a formal tender and offer of payment and demand of deed by the purchaser is not necessary to entitle him to recover back what he has paid under the executory contract, as the law does not require idle ceremony." 29 Am. & Eng. Ency. Law, 726.

On the other hand, mere defect of title in the vendor and a present inability to give such a title as he covenants to do in a bond for title, does not, in all cases, dispense with the necessity of payment of the entire purchase money and the demand by the vendee of a conveyance, in order to entitle the latter to maintain an action to recover back the purchase money already paid; and where, in such an action, there is no proof of tender of payment of the purchase money and of demand for the conveyance, and it is shown that, notwithstanding an infirmity of title in the vendor, if the purchase money had been paid, the vendee could and would have obtained a title conforming to the covenant, the plaintiff cannot maintain the action. Pate v. McConnell, 106 Ala. 449, 18 South. 98.

[12] Notwithstanding Nunn's testimony that he was able, ready, and willing to convey to plaintiff a good and unincumbered title on or before the last day appointed for performance, and specifically that he had obtained a release of the Chickamauga Trust Company's mortgage, and had arranged for a loan of sufficient money to procure a release of the Schiffman mortgage, if the jury believed the testimony of Drake, they might properly have found, on the whole evidence, that Nunn was not able or ready to convey the title free of incumbrances at the appointed time; and that Drake was able, ready, and willing to perform on his part; and, further, that a formal tender of performance by Drake at the bank, where alone he was authorized and required to make his tender, would have been unavailing, since the depositary bank held no release of either mortgage, and had no instructions with respect thereto, and could have done nothing more than deliver the deed to Drake, and receive his money, or money and mortgage, as provided by the contract.

It is to be observed that the release which Nunn claimed to have had of the Chickamauga Company mortgage, secured from an agent of that company, does not appear to have been given by any proper authority, and in any case was worthless, in view of the fact that the mortgage had been transferred by that company to another foreign corporation, and a release could be given only by the transferee.

If Drake's testimony be taken as true, we think it was Nunn's duty to secure and place the releases with the bank with instructions to deliver them with the deed when properly demanded, or else to be there with them himself for that purpose. If he failed to do so, and Drake, after reasonable efforts, failed to find him in town, the jury might well have found that Nunn was in default, and have excused Drake's omission to make a formal tender of performance at the bank. The law on this subject is stated in Brady v. Green, 159 Ala. 482, 48 South. 807.

On this phase of the case, therefore, we think that the general affirmative charge for the defendant Nunn was improperly given, and that the question of default in performance of the contract, whether by Nunn or Drake, should have been submitted to the jury.

For the error in instruction, and for the reasons stated, the judgment will be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

On Rehearing.

SOMERVILLE, J. Appellee presents two arguments in justification of the action of

the trial judge in giving the general affirmative charge, for which the judgment has been reversed.

[13] 1. It is contended that since plaintiff replied specially to defendant's special pleas 8 and 9, and the record exhibits no formal written plea of the general issue to plea 3, 4, 5, 6, and 7, those pleas must be taken as confessed, citing Miller v. Johnson, 189 Ala. 354, 66 South. 486; Williams v. Holder, 202 Ala. 652, 81 South. 608; Ray v. Fidelity-Phœnix F. Ins. Co., 187 Ala. 91, 65 South. 536.

[14] This is of course a familiar rule of pleading, and not to be controverted. But counsel overlooks the fact that the judgment entry recites that "thereupon issue being joined on counts 1, 2, 3, 4, 7, and 8, of the complaint, and pleas 1, 2, 3, 4, 5, 6, 7, 8·and 9 as an answer to the complaint," etc.

This recital is conclusive to the effect that issue was joined on all of defendant's special pleas and that they were not confessed. Hatchett v. Molton, 76 Ala. 410, 411; Bradford v. Boozer, 139 Ala. 502, 36 South. 716; Powell v. Henry, 96 Ala. 412, 413, 11 South. 311; Prov. Sav. Life Ins. Society v. Pruett, 157 Ala. 540, 47 South. 1019; Smith v. Br. Bank, 5 Ala. 26. In the face of such a recital in the judgment it is obvious that the cases relied on by appellee are not in point.

[15] 2. It is contended also that plea 3, to which plaintiff's demurrer was overruled, was fully and completely proven without dispute; and hence, no matter how immaterial the plea may have been as to some of the counts of the complaint, plaintiff's joinder in issue thereon entitled defendant to the general affirmative charge, as given.

[16] This rule, though highly technical, and sometimes promotive of injustice, has been firmly established by our decisions. Cent. of Ga. Ry. Co. v. Gross, 192 Ala. 354, 68 South. 291; White v. Yawkey, 108 Ala. 270, 19 South. 360, 32 L. R. A. 199, 54 Am. St. Rep. 159. But a party who invokes this technical rule must himself submit to its rigorous logic; and every allegation of the plea must be proven without dispute, in order to justify an affirmative instruction.

While the provisions of the contract set up by plea 3 were shown without dispute, the allegations of the plea as to the origin and manner of the negotiations preceding the contract were in sharp conflict. The affirmative charge for the defendant, on the theory that plea 3 was proven without dispute,, was therefore improperly given.

We find no support for the application for rehearing in the considerations urged, and the application will be overruled.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.