285 So.2d 92

**ALABAMA POWER COMPANY,**
a corporation

v.

**S. M. HUSSEY.**

**SC 339.**

Supreme Court of Alabama.

Nov. 8, 1973.

Balch, Bingham, Baker, Hawthorne, Williams & Ward and James O. Spencer, Jr., Birmingham, Smith & Smith, Phenix City, for appellant.

C. Neal Pope, Phenix City, for appellee.

BLOODWORTH, Justice.

Defendant, Alabama Power Company, appeals from a judgment on a jury verdict for $30,000 in an action for wrongfully disconnecting and discontinuing electric current to the residence of plaintiff, Hussey, appellee herein.

Plaintiff Hussey filed his complaint in two counts, count one alleging defendant wrongfully discontinued electric service to the plaintiff's residence, and the second count averring defendant wilfully or wantonly discontinued the electric service. Defendant's demurrer was overruled. Defendant thereupon filed eight pleas. Plea Six is a plea of confession and avoidance based upon an alleged refusal by plaintiff to make a deposit in accordance with Rule 7 of the General Rules applying to public electric, gas and water utilities in the State of Alabama promulgated by the Alabama Public Service Commission, which permits the Power Company to require a deposit from customers to guarantee payment of current bills, when in its judgment such deposit is necessary. Plaintiff did not demur to defendant's pleas, but rather joined issue on them. Trial was had and a jury returned a verdict in favor of the plaintiff for $30,000. Defendant's motion for a new trial was denied. Defendant appeals.

Briefly, the facts of this case are as follows. Plaintiff had been a customer of the Alabama Power Company for a period of 13 years, during which time his monthly electric bill had never exceeded $50.00. He has always paid these bills timely.

In September, 1971, he received a monthly bill from the Alabama Power Company for $172.46. Plaintiff immediately called the local office of the Alabama Power Company and told them that the bill was unusually high and requested that the meter be rechecked. A series of telephone calls and trips out to the plaintiff's residence by the defendant's employees apparently followed, and the Power Company assured the plaintiff that the bill was correct. Plaintiff then hired his own electrician, Mr. Tice, whom the Power Company had assured him was competent for the job, to recheck the meter. Mr. Tice

checked the meter, found and replaced a burned out part.

In October, 1971, plaintiff received a monthly bill from the Power Company in the amount of $81.73. Both bills were paid on October 22.

About November 24, plaintiff received a letter from the Alabama Power Company stating that, as a result of an investigation of plaintiff's account, the company had determined that plaintiff's meter had been tampered with and that plaintiff had been underbilled. The letter then stated that a revised billing for the past 13 months indicated that plaintiff owed an additional 490.95. The next day, plaintiff received another letter from the Power Company which demanded a deposit of $120.00 and stated that if such deposit were not made within 10 days, electric service to the plaintiff would be disconnected. The deposit was not paid and the electric power to plaintiff's residence was cut off for a period of nine days. This suit followed. Nothing further has occurred with reference to the $490.95 bill. We presume its collection was abandoned.

Three issues are argued on this appeal. First, defendant contends that it proved all the allegations of Plea Six, and that therefore the trial court committed reversible error in denying defendant's request for the general affirmative charge. Second, defendant contends that the trial judge committed reversible error in denying defendant's motion for new trial on the grounds that a juror, who allegedly had made "complaints" to the Power Company in the past, failed to so state when questioned on voir dire. Third, defendant contends that the verdict of the jury was so excessive as to necessarily result from prejudice, passion, partiality or some other controlling sentiment, and that the trial judge committed reversible error in failing to set it aside on defendant's motion for a new trial.

Defendant's Plea Six is as follows:

"6. That the defendant under the provisions of Rule 7 of the General Rules applying to Public Electric, Gas and Water Utilities in the State of Alabama promulgated by the Alabama Public Service Commission Docket No. 15957 that said defendant did require the plaintiff to put up a cash deposit intended to guarantee payment of current bills for public utility services after determination had been made by the defendant, a public utility, that in its judgment such deposit was necessary. The defendant then at its discretion did render to the plaintiff, its customer, a bill for the required deposit and the plaintiff was granted five days in which to make the required deposit. At the expiration of said five-day period, service to the plaintiff was discontinued by the defendant after plaintiff refused to put up said required deposit, all under the provisions of Rule 7 as described above."

■ It is well established that undisputed proof of an inmaterial plea entitles the defendant to a judgment as a matter of law. The truth of the plea, however, must be proved "without dispute" (Gay v. Cummings, 23 Ala.App. 8, 122 So. 313, cert. den., 219 Ala. 324, 122 So. 313 (1929)), by "uncontradicted proof of the facts averred" (Doss v. Wadsworth Red Ash Coal Co., 185 Ala. 597, 602, 64 So. 341 (1914)), and "without conflict" in the evidence (Central of Georgia Ry. Co. v. Gross, 192 Ala. 354, 360, 68 So. 291 (1914)).

In Drake v. Nunn, 210 Ala. 136, 97 So. 211 (1923), this court reversed a judgment where an affirmative charge for defendant had been given because, while the bulk of the plea was without dispute, one fact averred in the plea was in sharp conflict. In doing this, the court made it clear that such pleas will be strictly construed:

"This rule, though highly technical, and sometimes promotive of injustice, has been firmly established by our decisions. Cent. of Ga. Ry. Co. v. Gross,

192 Ala. 354, 68 So. 291; White v. Yawkey, 108 Ala. 270, 19 So. 360, 32 L. R.A. 199, 54 Am.St.Rep. 159. But a party who invokes this technical rule must himself submit to its rigorous logic; and *every allegation of the plea must be proven without dispute,* in order to justify an affirmative instruction." (Emphasis added)

Upon examining the record in the case at bar, it is clear that at least one averment of Plea Six, i.e., that the deposit was "intended to guarantee payment of current bills," was in sharp conflict. While the defendant Power Company did introduce testimony that such was the purpose of requiring the deposit of plaintiff, this court takes note that there was testimony to the effect that plaintiff's bill was not in arrears at the time it was determined a deposit was necessary; that plaintiff had kept his power bill current for 13 years; that the deposit demanded was more than twice the highest bill the plaintiff had ever received, exclusive of the two disputed bills; that defendant had contended that plaintiff's meter had been tampered with; and, that agents of defendant had maintained a surveillance of plaintiff's house at night. These facts, as well as the circumstances of the two disputed bills, suggest the Power Company's motive for requiring the deposit may have been other than as averred.

■ Despite the fact that the trial judge sustained as irrelevant an objection to the only explicit question relating to the discontinuance of service occasioned by unauthorized motive, we think there was at least some evidence which disputed defendant's evidence (under Plea Six) as to its purpose in demanding the deposit. As we have said before, a mere scintilla of evidence will avoid an affirmative charge and require the question to go to the jury. Lawson v. General Telephone Company of Alabama, 289 Ala. 283, 267 So.2d 132 (1972).

■ It is thus that we conclude that the trial court was correct in denying defendant's motion for a new trial based upon the denial of defendant's motion for an affirmative charge.

Next, we consider defendant's contention that the trial judge committed reversible error in denying defendant's motion for a new trial on the grounds that one of the jurors failed to answer truthfully a question on voir dire. The question arose in the following context, viz:

"THE COURT: Now, then, whether you are customers now or even if you have been customers in the past, during such time have you ever had occasion to make a complaint—I wouldn't want to know what it was—either with reference to service or a bill or whatever, make some sort of complaint of some kind? I just want to know whether you have had occasion to make a complaint. All right.

"Do any of you know of any reason why you could not be fair and impartial if selected to serve as a juror in this case?

"I will expand the question before that one. I asked you if you had ever had occasion to question something. Has any member of your immediate family ever had such an occasion, your own family or perhaps your parents or someone? * * *"

Evidence was presented to the trial judge on motion for a new trial that the juror Mrs. Melinda Wilkes, who served on the trial jury, had failed to respond to this question. Furthermore, it was shown that juror Wilkes had made several phone calls to defendant Power Company during the summer and fall of 1972 with inquiries regarding the amount of her bill, the repair of an air conditioner and arranging to pay her bill in installments. Defendant contends that such calls amount to "complaints," and that juror Wilkes' failure to reveal this on voir dire denied defendant a fair and impartial jury in the trial of this cause.

In our recent case of Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), we pronounced the applicable rule to be followed in this state concerning jurors who fail to respond to questions put to them on voir dire. In that case, this court stated:

"Neither Sanders v. Scarvey [284 Ala. 215, 224 So.2d 247], *Leach* [Leach v. State, 31 Ala.App. 390, 18 So.2d 285], nor the original opinion in the instant case, is authority for the proposition that on voir dire *any* failure of *any* prospective juror to respond properly to *any* question *regardless of the excuse or circumstances* automatically entitles a party to a new trial or reversal of the cause on appeal.

"We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant. * * *"

This court in *Freeman* went on to state that:

" * * * [T]he question as to whether or not the complaining party was prejudiced by the juror's failure to answer properly is a matter primarily within the discretion of the trial court. In the absence of a showing of an abuse of discretion the ruling of the trial court thereon will not be reversed. * * *"

■ In determining whether the trial court abused its discretion in denying defendant's motion for a new trial, we have been hampered by the court's failure to make express findings on this issue. We think it is the better judicial practice to include in the record such express findings on the question of probable prejudice.

Nevertheless, we have previously held the rule to be that, where there is no direct finding by the trial judge on a given matter and the decree rendered necessitated such a finding, it will be presumed on appeal that there was such a finding in the absence of anything to the contrary. Mitchell v. Harris, 286 Ala. 724, 246 So.2d 648, 651 (1971); Aikin v. Murphy, 282 Ala. 538, 213 So.2d 383 (1968).

In the instant case, evidence on defendant's motion was heard by the trial court ore tenus. Such evidence included testimony specifically addressed to the issue of juror Wilkes' probable prejudice against defendant Power Company as a result of the alleged complaints. Absent any evidence to the contrary, we must presume that the learned trial judge applied the applicable standard as announced in Freeman v. Hall, supra, and that his denial of defendant's motion for a new trial was predicated upon his conclusion that probable prejudice to defendant did not result from Mrs. Wilkes' failure to answer and her subsequent service on the jury.

■ It is our conclusion that such a finding is amply supported by the evidence. The record reveals that Mrs. Wilkes testified that she had called Mrs. Lunsford and Mr. Norris, close personal friends who worked for the Power Company, and had talked to them concerning her bill and the repair of her air conditioner; that she would not have called at all had she not known Mrs. Lunsford personally; that she had not considered herself as making a complaint but merely inquiring about her bill and service; that had she known that her calls were to be considered as making a "formal complaint," she would not have called; and that she considered only the evidence which came from the witness stand in deciding the case and that no calls made by her had any part in influencing her decision as a juror. The trial judge did not abuse his discretion in denying defendant's motion for a new trial on this ground.[1]

1. From the record it appears that Mrs. Wilkes initiated either five or six conversations with the defendant Power Company's employees during the summer of 1972. In her first call, sometime in June, Mrs. Wilkes arranged to have a Power Company repairman come to

The final argument presented by defendant on this appeal challenges the amount of the verdict as excessive. With this contention we agree.

At the outset, we recognize that there can be no set formula for determining the appropriate amount of damages to be awarded in any given case. And, this court has long held that a trial court will not be reversed for refusing to disturb a verdict unless, after allowing all reasonable presumptions in favor of its correctness, the weight of the evidence against the amount of the verdict is so decided as to convince this court that it indicates passion, prejudice, partiality, or corruption on the part of the jury.

On the other hand, this court declared in Sturdivant v. Crawford et al., 240 Ala. 383, 199 So. 537, 539, viz:

"In determining the adequacy of the damages assessed by the jury it is not necessary that the court should inquire and declare what wrongful influence or failure of duty in the consideration of the case has wrought a miscarriage of justice. For reasons of public policy, the deliberations of the jury cannot be invaded to find what motive or influence worked the mischief. The record may or may not shed light on the subject. The internal evidence, the verdict itself, in the light of the facts clearly disclosed by the evidence, usually furnishes the determining date. * * *"

After a careful review of the record in this cause, we are of the opinion that the verdict is so clearly excessive as to call for the interposition of our court and that the trial judge erred in denying the motion for new trial on this ground.

Therefore, unless the plaintiff, within thirty days from this date, enters a remittitur in the sum of $10,000, thus reducing the judgment to $20,000, the judgment will stand reversed and the cause remanded. On entry of such remittitur, the cause will stand affirmed for the reduced sum of $20,000.

Affirmed conditionally.

HEFLIN, C. J., and MERRILL, MADDOX, FAULKNER and JONES, JJ., concur.

HARWOOD, J., concurs specially.

COLEMAN, J., dissents.

HARWOOD, Justice (concurring specially):

I concur with the result reached in the majority opinion except as to the amount of the remittitur required.

---

her home to repair her air conditioner. Not even the defendant's employees characterize this call as a complaint. In the second call, in July, she inquired whether the part necessary to fix her air conditioner which had been ordered from the factory had yet arrived. There may also have been a third call in July making the same inquiry. However, the Power Company employee who testified to both the "second" and "third" calls later testified that there was only one "complaint" about an air conditioning part. In a fourth call on July 19, Mrs. Wilkes requested that her meter be rechecked; this call was apparently returned on August 7, by Mr. Kelley who described such a request as "routine." (This call is characterized a "complaint" by a Power Company witness.) The fifth call on September 14, to Mrs. Lunsford was a similar request to have the meter rechecked. (This call is called a "complaint" also.) The call was returned by Mrs. Webb who didn't specifically remember having spoken to Mrs. Wilkes at all. The final call was simply a request for an itemized bill on the repair of the air conditioner.

While employees of defendant Power Company characterize only three of these calls as "complaints," we do not feel the trial court was bound by such a characterization. It appears that several of the calls involve entirely routine contacts between the Power Company's customer and its employees. Furthermore, the testimony by Mrs. Lunsford that all calls to verify bills are categorically considered "complaints" by her casts doubt on the reliability of such a characterization of these calls. Mrs. Wilkes, the juror, testified she was merely trying to find out if her bill was correct.

True, the conduct of the Alabama Power Company was aggravated and oppressive, and certainly subjected it to being assessed with punitive damages. However, the appellees were without electric current for only nine days. There was no evidence of any special damages. In my opinion a judgment in the amount of $15,000.00 would adequately compensate the appellees for any inconvenience or embarrassment they may have suffered, and at the same time sufficiently chastise and punish the Power Company for their conduct in this instance.

Admittedly, there is no certain rule to be applied in determining the excessiveness or inadequacy of damages. It is simply whether the judicial conscience is quickened by the damages awarded. Foster v. Floyd, 276 Ala. 428, 163 So.2d 213. It is my feeling that the damages awarded are excessive to the extend of $15,000.00.

COLEMAN, Justice (dissenting):

Defendant assigns for error the action of the trial court in overruling defendant's motion for new trial. Defendant argues that the trial court erred in overruling those grounds of the motion wherein defendant asserts that Melinda Weaver Wilkes was a member of the venire from which the jury was chosen and failed to answer questions propounded to the venire by the trial court on voir dire and that, because of the failure of Melinda Wilkes to answer, defendant was prejudiced. Ground 50 of the motion recites:

"50. For that information has come to the defendant since the trial of this cause that juror Melinda Weaver Wilks (sic), a member of the Petit Jury in the trial of this cause, had complained of high bills to personnel of Alabama Power Company's District Office in Phenix City, Alabama, in July, 1972, and September, 1972, and said juror failed to respond to the Court's question on *voir dire* examination when the jury *venire* was questioned as to whether or not any

one of them had ever complained of high bills or had any other dispute with the defendant, Alabama Power Company."

Melinda Wilkes did serve as a member of the jury which returned the verdict against defendant.

The trial began October 5, 1972. The record discloses that the trial court, on voir dire examination of the venire, made the following statement:

" . . . How many of you are customers of the Alabama Power Company? Start here. Just stand and give your name."

Then follows a list of twenty-three names, including the name: Melinda Wilkes.

The court then said to the venire:

"THE COURT: Now, then, whether you are customers now or even if you have been customers in the past, during such time have you ever had occasion to make a complaint—I wouldn't want to know what it was—either with reference to service or a bill or whatever, make some sort of complaint of some kind? I just want to know whether you have had occasion to make a complaint. All right.

"Do any of you know of any reason why you could not be fair and impartial if selected to serve as a juror in this case?

"I will expand the question before that one. I asked you if you had ever had occasion to question something. Has any member of your immediate family ever had such an occasion, your own family or perhaps your parents or someone? . . . "

The record indicates that four jurors (Rushin, Mathews, Funderburk, and Allen) responded to the court's question by giving their names.

On the hearing of the motion for new trial, four employees of defendant testified.

1. Annelle Webb testified that she is employed in the accounting department; that she talked with Melinda Wilkes after Melinda Wilkes made a complaint on September 14, 1972; that the conversation was "Somewhere between this date and the end of the month"; that the complaint of September 14 was "a high bill complaint"; that the conversation was by telephone; and that the witness "Just informed her (Melinda Wilkes) that we had checked her meter and that it was reading correctly." (Par. Supplied)

2. Wylean Lunsford testified that she is a customer contact clerk; that a first cousin of Melinda Wilkes is married to a brother of the witness; that the witness talked to Melinda Wilkes by telephone about the first or second week of July, 1972; that the witness was at work; that the substance of the conversation was that Melinda Wilkes had been having trouble with her air conditioner; that defendant's repairman had been to the house of Melinda Wilkes and had told her that it would take about three weeks to obtain a part for the air conditioner; that it had been more than three weeks at the time of conversation; and that Melinda Wilkes " . . . was unhappy about the air conditioner not being repaired."

The witness testified that Melinda Wilkes called again within a week or maybe less, and that the substance of the conversation was as follows:

"A. Well, she told me her air conditioner had not been repaired yet, and that she didn't want to get ugly about it but she felt like that we had had more than enough time to get the part in and it still had not been repaired."

The witness testified that on July 19, Melinda Wilkes called the witness "to complain about her bill"; and that the substance of the conversation was as follows:

"A. Well, she told me that her air conditioner had been out of order and she had not used it any during this billing period and that she felt her bill was much too high because the air conditioner had not been used."

The witness testified that Melinda Wilkes called again on September 14, 1972, and the substance of the conversation was as follows:

"A. Well, she felt that her bill—there was so much difference in her bill the month before and that month, and that it was much too high, and she didn't feel that she had possibly used that much current."

The witness testified on cross examination that Melinda called later in October about the repair bill which was "In the neighborhood of $90.00."

On redirect, the witness testified that on the first three occasions Mrs. Wilkes "sounded upset" but she did not sound upset on the last occasion.

3. Arthur Kelley testified that he talked with Melinda Wilkes by telephone on August 7, 1972, in response to a complaint about her bill; that he advised her that "the billing in question was correct." On cross examination the witness testified:

"A. No, she was not upset. She just questioned the bill."

4. Billy B. Norris testified that he was employed by defendant as an appliance repairman; that he talked with Melinda Wilkes in June, 1972, about a window air conditioning unit; that the motor was bad; that it was necessary to order a new motor; that it took about a month to get it; that he put it in the air conditioning unit in "the latter part of June or the first of July"; that he talked with Mrs. Wilkes at her house; and that she called several times about the part, when it would come in or why it took so long to get it.

The witness testified that no unpleasantness was involved as far as he was con-

cerned; that she did "express concern over the bill"; and when he went out to make the repair, "She was perturbed, yes, sir."

Melinda Wilkes testified that in July or August, 1972, her air conditioner would not run and she called Norris and asked him to come out and check the air conditioner; "He said he could but it would be the Alabama Power Company. And I said that would be fine."; that the period of time between the first call and the actual repair was about two and a half to three months during the summer; that she made one or more calls checking to see when the work would be done; that she always called Mrs. Lunsford, who was a friend; that she asked Mrs. Lunsford could we get an itemized statement and she said yes; that the witness said " 'It seems, you know, high.' "; that she got a statement but she does not remember how it was itemized; that when she would look at a bill and consider it to be possibly high she would use another statement, a prior bill, and "We have a folder and we keep all our bills."

The witness testified that she remembered the judge asking questions about whether any of the potential jurors had filed a complaint with defendant, but she did not stand up and inform the judge that she had complained; and that she did not know that she was complaining.

On cross examination, Melinda Wilkes testified:

"Q. And if testimony was given about a number of phone calls to the Power Company inquiring about bills, you would agree with that. You don't deny you made the calls?

"A. I made the calls.

"Q. But you don't call them complaints?

"A. No. I just like to know.

"Q. You were questioning the bill, then?

"A. No. I just like to make sure.

"Q. You were questioning the amount of the bill, was what you considered yourself doing?

"A. Yes."

As stated above, the trial began October 5, 1972. Mrs. Wilkes acknowledged that she had made numerous "calls" to the office of defendant during the three preceding summer months. She testified that her air conditioner would not run; that two and a half months' delay occurred between her first call to defendant about the air conditioner and its actual repair. She had made numerous calls in which she "questioned" the correctness of bills she had received from defendant. As noted above, she called Wylean Lunsford on September 14, 1972, three weeks before the day of trial with respect to a bill, and "Well, she felt that her bill—there was so much difference in her bill the month before and that month, and that it was much too high, and she didn't feel that she had possibly used that much current."

The testimony on the hearing of the motion can lead only to the conclusion that Mrs. Wilkes had had such experiences in her dealings with the defendant during the summer immediately preceding the trial in October that, at the least, would produce feelings of frustration and resentment, and in most persons would naturally result in hostility and prejudice against defendant.

Nevertheless, she did not respond to the inquiry by the court asking jurors whether they had made "some sort of complaint" against defendant, or "had occasion to question something." As a result of her failure to answer, defendant was denied the right to advisedly exercise its peremptory strikes in selection of the jury. If de-

fendant had been informed that Mrs. Wilkes had made complaints or "questioned" the amount of her bills as shown by the evidence on the hearing of the motion, prudence would have required defendant to regard her as a juror biased against defendant. See Title 30, § 52. In reversing for failure of jurors to answer on voir dire, this court has said:

"We agree with defendant's contention that parties have a right to have questions answered truthfully to enable them to exercise their discretion wisely in the use of their peremptory strikes. Section 52, Title 30, Code of Alabama, 1940, as last amended. When jurors fail to answer questions correctly, a party is denied the exercise of that right. Morris v. Zac Smith Stationery Co., 274 Ala. 467, 149 So.2d 810; Parkinson v. Hudson, 265 Ala. 4, 88 So.2d 793; Leach v. State, 31 Ala.App. 390, 18 So.2d 285, cert. den. 245 Ala. 539, 18 So.2d 289; Birmingham Electric Co. v. Yoast, 256 Ala. 673, 57 So.2d 103, 30 A.L.R.2d 907.

"Our courts have held that the concealment by a juror of information called for in voir dire examination need not be deliberate in order to justify a reversal, for it may be unintentional, but insofar as the resultant prejudice to a party is concerned it is the same. Leach v. State, supra.

"While some of the failures to answer on voir dire might reasonably be explained away, we feel counsel in this case were deprived of their right to true and correct answers to the questions propounded. This constitutes reversible error." Sanders v. Scarvey, 284 Ala. 215, 219, 224 So.2d 247, 251.

I am of opinion that the trial court erred to reversal in overruling those grounds of the motion for new trial such as Ground 50 quoted above, and that the judgment should be reversed and the cause remanded for another trial.