STEAGALL, Justice.
Alabama Power Company appeals from the denial of its motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial in Winford Smith’s suit against it. Following disconnection of his electric service, Smith sued Alabama Power for damages based on allegations of negligence; wantonness; trespass; outrageous conduct; false and malicious allegations of theft made by Alabama Power and one of its employees, W.L. Silver, Jr.; defamation by Alabama Power and Silver; deprivation of property without due process of law; attempted extortion; and invasion of Smith’s right to privacy.[1] Alabama Power filed a counterclaim that sought recovery for unpaid electrical service. The trial judge granted Alabama Power’s motions for directed verdict on all counts of Smith’s complaint, except those alleging negligence, wantonness, and deprivation of property without due process. The jury returned a general verdict for Smith on both his complaint and Alabama Power’s counterclaim and awarded him $55,000 in compensatory and punitive damages.
On February 26, 1987, Alabama Power customer service inspectors Everett Mason and Bill Black went to Smith’s house to inspect the electric service meter and discovered in the top right corner of the meter a hole with pine straw in it. According to Mason’s testimony, the marks on the meter indicated that the pine straw had been retarding the meter for some time. Mason and Black showed the altered meter to Smith’s wife and explained to her that they had to replace it with another meter until the following day, at which time it would be removed. They told her that her husband needed to go by the Alabama Power office the next day to discuss the meter situation with Bill Silver, Alabama Power’s district accounting manager, and that once Silver and her husband agreed on the amount that the Smiths owed for unpaid service, a new meter would be installed.
Smith met with Silver the following day, and Silver told him that his calculations showed that Smith owed $727.86 for electric service. Smith said that he had not tampered with the meter and that he did not feel that he owed Alabama Power any money. Smith left Silver’s office and told Silver that he would get back in touch with him. Silver testified that Smith’s altered meter was removed at about 1:00 o’clock that afternoon and that a new meter was installed around 5:30 p.m. the same day. Thus, Smith’s house was without power for roughly 4V2 hours.
Alabama Power argues that the trial judge erred in submitting Smith’s claim of deprivation of property without due process to the jury, in light of Jackson v. Metropolitan Edison Co., 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In that case, Metropolitan Edison, a privately owned and operated Pennsylvania corporation, held a certificate of public convenience issued by the Pennsylvania Public Utility Commission. Under a provision in its general tariff filed with the commission, Metropolitan Edison had the right to discontinue service to any customer after giving reasonable notice to the customer of nonpayment of bills. The United States Supreme Court held that Metropolitan Edison’s action in terminating a customer’s electric service without notice or a hearing regarding the disconnection of that customer’s electric service was not state action for Fourteenth Amendment purposes because Metropolitan Edison was a privately owned utility and the State of Pennsylvania was not sufficiently connected to the termination.
Alabama Power has a provision similar to the tariff provision in Metropolitan Edison. Rule 5 of its Schedule of Service Regulations and Rates, filed with the Ala *1086 bama Public Service Commission, reads, in pertinent part:
“In the event the wiring or metering equipment on Consumer’s premises is altered or changed in any way so as to cause the meter or mechanical device for measuring the usage to give false registration or to fail to register the power consumed, the Company may without notice to Consumer, discontinue service.”
The basis of Alabama Power’s argument is that its conduct in temporarily cutting off Smith’s power did not constitute state action for Fourteenth Amendment purposes under either the United States Constitution or the Alabama Constitution. The two cases it cites, Carlin Communication, Inc. v. Southern Bell Telephone & Telegraph Co., 802 F.2d 1352 (11th Cir.1986), and Kearson v. Southern Bell Telephone & Telegraph Co., 763 F.2d 405 (11th Cir.1985), held that the action of privately owned telephone companies in either terminating service to a customer for nonpayment of bills or restricting the message content of a “dial-it” subscriber did not involve state action.
Smith counters with two Alabama cases that he contends support his due process claim against Alabama Power. In Pike v. Southern Bell Telephone & Telegraph Co., 263 Ala. 59, 81 So.2d 254 (1955), this Court held that the telephone company’s removal of a customer’s telephone pursuant to the direction of the city commissioner of public safety constituted a denial of due process. Likewise, in Alabama Power Co. v. Hussey, 291 Ala. 586, 285 So.2d 92 (1973), a customer whose electric service was terminated received a $30,000 judgment in his suit alleging wrongful disconnection; this Court affirmed, conditioned upon the customer’s acceptance of a $10,-000 remittitur. Neither one of those cases involved a claim based on violation of due process under the Alabama Constitution of 1901; thus, they are distinguished from the present case.
Based on Metropolitan Edison, it is clear that the facts of this case and this particular regulation of the Public Service Commission do not support Smith’s deprivation of property without due process claim. The United States Supreme Court specifically held that approval of a rule such as the tariff in that case by a state utility commission does not automatically convert the regulated utility’s action in disconnecting service into state action. “Without state action, the due process clauses of the Federal or State Constitutions have no field of operation, as such” in cases involving alleged deprivation of property without due process. Tucker v. Jefferson County Truck Growers Association, 487 So.2d 240, 242 (Ala.1986). See, also, Elgin v. Montgomery County Farm Bureau, 549 So.2d 486 (Ala.1989). Thus, the trial court erred in denying Alabama Power’s motion for a directed verdict as to Smith’s deprivation of property without due process count.
Smith argues that, assuming there was any error below, the jury’s verdict can be presumed to be based upon the “good” counts, that is, his negligence and wantonness claims. He relies on Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981). However, this Court stated in Aspinwall, on application for rehearing:
“[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count.”
405 So.2d at 138 (emphasis added). In Proctor & Gamble Co. v. Staples, 551 So.2d 949, 954-55 (Ala.1989), this Court stated:
“Where a defendant, by way of motion for directed verdict and then for j.n.o.v., has specifically challenged the sufficiency of the evidence supporting one or more of several claims, and where the jury has returned a general verdict, if *1087 the evidence supporting any one of those challenged claims is insufficient, then the verdict will not be permitted to stand. See Aspinwall v. Gowens, 405 So.2d 134 (Ala.1981).”
See, also, John Deere Industrial Equipment Co. v. Keller, 431 So.2d 1155 (Ala.1983), and South Central Bell Telephone Co. v. Branum, 568 So.2d 795 (Ala.1990).
Alabama Power moved for a directed verdict both at the close of Smith’s evidence and at the close of all of the evidence and also moved for a JNOV regarding the due process count. Its motions specified the counts that were not supported by the evidence and explained in detail how they were not supported. Because the submission of that count to the jury was erroneous, the judgment of the trial court denying Alabama Power’s motion for JNOV or, in the alternative, a new trial, is reversed and the case is remanded for a new trial on negligence and wantonness counts.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, HOUSTON, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., concurs in the result.

. Smith voluntarily dismissed the claims against Silver; thus, Silver is not a party to this appeal.