267 So.2d 132

**Glenda LAWSON**

**v.**

**GENERAL TELEPHONE COMPANY OF ALABAMA, a corporation.**

**4 Div. 434.**

Supreme Court of Alabama.

Sept. 7, 1972.

Rehearing Denied Oct. 19, 1972.

Tipler, Fuller & Barnes, Andalusia, for appellant.

Albrittons & Rankin, Andalusia, for appellee.

BLOODWORTH, Justice.

Plaintiff appeals from a judgment of the trial court granting the defendant a new trial after a jury verdict and judgment for plaintiff for $15,000. The sole question presented on this appeal is whether the trial court's action constituted error. We answer this question in the affirmative and reverse and remand the cause.

This case arose out of the following factual context.

On Sunday evening, September 29, 1968, after dark, Waco Taylor was seated in his den at his home located on the west side of Stanley Street in Andalusia, Covington County, Alabama. He heard a loud "crack" and ran outside. He found a Mr. Griffith, a neighbor, looking at the telephone service lines leading from the east side of Stanley Street across the street to Griffith's home. The pole was broken and the lines sagged across the street. The lines were about 6 feet above the center of the north bound lane. Mr. Griffith testified he was in his house when he had heard the noise. He said it was like a banjo strumming, and like somebody hit something. He ran outside. Both men testified the pole was broken off at or near the ground with the wires still holding it partially up. (The lines were located about the middle of the block.)

Just then an automobile, being operated by Ted Grimes in a northerly direction on Stanley Street, came upon the scene. It was stopped by Waco Taylor, who waved down Grimes, warning him the lines were down and that he should not attempt to drive under them in that lane. There was testimony that Grimes' radio aerial would not clear the wires if he had driven under them. Taylor told Grimes to back up. Grimes backed up about ten feet and stopped just as the Lawson car approached from his rear on Stanley Street. Plaintiff was a passenger in this car which was being operated by her husband. Taylor attempted to flag down the Lawson car but did not succeed. The Lawson car struck the Grimes car in the rear. The Grimes car traveled approximately 60 feet after the impact. As a result of this collision, Mrs. Lawson was severely and permanently injured. She suffered facial and head injuries and had to undergo extensive plastic surgery. She remains permanently scarred. There was some testimony to indicate Lawson applied his brakes before the collision.

According to defendant's plant supervisor, the pole in question was installed in 1943, and whether new or used, he could not say. He admitted that there was no periodic inspection made of poles. Though, when an employee climbed a pole he knocked on it with his pliers to see if it was safe to climb. There was testimony that before the accident the service wires had been strung from 16 feet 2 inches to 17 feet 9 inches above the center of the lanes of the street. Evidence was offered that the National Electrical Safety Code, prepared by the National Bureau of Standards, requires a minimum basic clearance of 18 feet

for communication wire. Defendant's supervisor testified he was unfamiliar with this standard. Further, there was evidence the pole in question was old, hard and brittle, with little resiliency. The National Electrical Safety Code specifies that such poles shall be periodically inspected and maintained in a safe condition.

Plaintiff's expert witness Payne testified that, in his opinion, the pole broke as the result of a jerk at the top of the pole when a vehicle of considerable height, such as a log truck, passed under the wires producing a sudden jerk, which combined with the condition of the brittle pole, snapped the pole. He testified it would snap easily.

Defendant offered evidence suggesting that a vehicle must have hit the pole causing it to break. However, Officer Thornton, who arrived within three or four minutes after the wreck, testified he found no debris to indicate the involvement of any third vehicle with the pole. Other witnesses testified to the same effect. Defendant also offered testimony to the effect that plaintiff's husband was intoxicated, and that plaintiff's injuries were the proximate result of his negligence. Defendant offered testimony that the steel wires (composing these lines) would break before the pole broke. Plaintiff offered its expert Payne who testified: that the maximum load at top of the pole (when it was new) was 151 pounds of pull; that the pole was, at the time, being subjected to 90 pounds of pull " * * * darn near loaded to the breaking point * * *; that a tug of pressure at top of the pole, rather than an impact at the bottom would more easily break the pole."

There were street lights at the intersections of Watson Street and Lindsey Bridge Road with Stanley Street, but none at the point where the pole was located. The condition of light was in dispute. The nearest light appears to have been at least 150 feet away. There was a dispute as to whether the pole was broken in one or two places. Defendant's supervisor testified he had not determined what caused the pole to break. There was testimony from several of defendant's expert witnesses to the effect that the pole was "sound," though they admitted it was "brittle" at the bottom.

Plaintiff's amended complaint was couched in two counts.

Count One-B alleged the defendant negligently erected its pole and wires across Stanley Street at an unsafe height above the public street at a point where traffic was wont to pass and as a proximate result of said negligence the defendant's pole was broken and its wires were caused to drop or sag across the public street in such a position as to block traffic, and that Ted Grimes was obliged to stop his car at or near the wires, and the automobile in which plaintiff was riding as a passenger was caused to collide with the Grimes vehicle resulting in plaintiff's injuries.

Count One-C charged defendant with negligently maintaining its pole in negligently failing to properly and adequately inspect it and as a result the pole became old, deteriorated and unsafe for the use put to it by defendant, and broke, and the wires were caused to sag across the public street in such a position as to block traffic and Ted Grimes was obliged to stop his vehicle at the wires, causing the automobile in which plaintiff was riding as a passenger to collide with Grimes vehicle, resulting in plaintiff's injuries.

The pertinent portions of the trial court's judgment granting defendant a new trial are, viz:

" * * * The Court is of the opinion that the Defendant was entitled to the general affirmative charge with hypothesis because, in the opinion of the Court there was an intervening efficient cause which proximately caused the Plaintiff's injury without regard as to whether or not the Defendant negligently maintained it's [sic] telephone lines and that the Plaintiff was not entitled to have the case submitted to the jury for a verdict.

* * * * * *

"It is the opinion of the Court that the Court erred in refusing the general affirmative charge with hypothesis and that a new trial should be granted based upon the Defendant's ground of the Motion No. 10."

Ground 10 of defendant's motion for new trial is as follows:

"10. The Court erred in refusing the following charge requested in writing by the Defendant:

"DEFENDANT'S CHARGE NO. 2

" 'The Court charges the jury, that if you believe the evidence in this case, you cannot find for the plaintiff.' "

Was the trial court correct in concluding that the defendant was entitled to a new trial because the court erred in not giving the general affirmative charge for defendant? We think not.

In civil cases, in this state, it is axiomatic that,

" * * * [T]he question must go to the jury if the evidence or the reasonable inferences therefrom furnish a mere gleam, glimmer, spark, the least bit, the smallest trace, a scintilla, in support of the theory of the complaint.—Lankford v. Mong, 283 Ala. 24, 214 So.2d 301, and cases cited * * *. * * *" Union Central Life Insurance Company v. Scott, 286 Ala. 10, 13, 236 So.2d 328, 332 (1970).

"Generally speaking, proximate cause is a jury question. McCaleb v. Reed, 225 Ala. 564, 144 So. 28; Allman v. Beam, 272 Ala. 110, 130 So.2d 194; and it is only when the facts are such that reasonable men must draw the same conclusion that the question of proximate cause is one of law for the courts. * * *" Giles v. Gardner, 287 Ala. 166, 169, 249 So.2d 824, 826 (1971).

Much of the evidence was in conflict and disputed. However, we are of the opinion that, taking the evidence most favorable to the plaintiff, and those reasonable inferences flowing therefrom, it was sufficient to take this case to the jury under the scintilla rule on the questions of initial negligence and proximate cause. In our view, defendant was not entitled to the general affirmative charge as to either aspect of the case. Particularly, we are not persuaded that reasonable men must draw the same conclusion from the facts on the issue of proximate cause in this case. It was thus for the jury.

Defendant cites two cases which it contends are decisive on the issue of proximate cause in this case. These cases are: Morgan v. City of Tuscaloosa, 268 Ala. 493, 108 So.2d 342 (1959); and Rhodes v. Strickland, 284 Ala. 621, 227 So.2d 392 (1969).

In *Morgan*, there was a suit for damages against the City of Tuscaloosa for the death of an infant as a result of being struck by a party's automobile, when that party ran his automobile into water backed up on a city street allegedly due to a negligently maintained drain, and water splashed upon his windshield, blinding him and causing him to lose control and strike the infant pedestrian. This court affirmed the trial court's judgment sustaining a demurrer to the complaint. The conclusion of this court was that the allegedly defective drain was not the proximate cause of the death of the infant because the defendant city could not foresee, on the basis of common experience, that failure to properly maintain the drain could cause death to the infant.

In *Rhodes*, a truck driver stopped his truck in the middle of a 6-lane highway when he experienced clutch failure. He signaled for following vehicles to pass, and an unidentified vehicle drove around the truck in the passing lane, then a second vehicle stopped, then a third vehicle (the plaintiff) stopped behind the second vehicle, and a fourth vehicle (defendant McQueen) struck plaintiff. We held the negligence, if any, of the truck driver was not a proximate cause of the plaintiff's injuries and he was entitled to the general affirmative charge. The jury found defend-

ant McQueen to be guilty of negligence in driving her car into the rear of plaintiff's car. This was the cause of plaintiff's injury and damage.

We think that neither case is dispositive of the question as to whether the defendant was due the affirmative charge in the instant case on the issue of proximate cause. We think it is self-evident that both cases are inapposite. (For an excellent discussion of "proximate cause" and applicable decisions of this court, see "Principal Alabama Actions In Tort: Part II, Francis H. Hare, Sr., and Francis H. Hare, Jr., 22 Ala. Law Rev. pp. 362 et seq.)

More in point is the holding in our recent case of Alabama Power Company v. Guy, 281 Ala. 583, 206 So.2d 594 (1968), which is most persuasive in reaching a determination in the instant case on both issues of negligence and proximate cause. It is very close factually to the case at bar.

There we held, in an action for injuries to a young boy who came in contact with an electric wire which fell on the ground when one of two automobiles, involved in an intersection collision, ran into a pole causing the wire to fall, the evidence made out a case for the jury on the question as to whether the Power Company was negligent, and whether such negligence was the proximate cause of the injury.

In that case, we reviewed the recent decisions of this court, with reference to proximate cause, viz:

"The most important and difficult question is that relating to proximate cause.

"Appellant cites Morgan v. City of Tuscaloosa, 268 Ala. 493, 108 So.2d 342, where we affirmed a judgment sustaining demurrers to a complaint charging that defendant's sewers were maintained negligently, causing a large puddle of water to form in the streets; that a third party drove his automobile through the water, which splashed on his windshield so that he could not see, and the automobile struck the plaintiff. In that case we said:

" 'It is true that the law will consider only the proximate cause and not a remote cause where there are two or more causes of injury. (Citing cases.)

" 'It is also true that where a prior cause merely created the condition or gives rise to the occasion and after the condition has been created an intervening agency produced the injury, the first is not the proximate cause. (Citing cases.)

 *     *     *     *     *     *'

"Appellant contends that the intervening independent act of a third person, not to be anticipated by appellant, created the condition of danger, and must be held to be the proximate cause of the injury, and that the complaint on its face shows no concurring negligence on the part of appellant.

"Appellee contends that the maintenance of high voltage wires in a weak and unsafe manner by appellant was the creation and maintenance of a dangerous condition and that appellant could reasonably anticipate that wires or cables in such condition might be broken and fall to the ground from any cause and cause injury to a third party. Appellee cites Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224, where this statement appears:

" 'The particular principle of proximate cause here pertinent to defendant's liability is: That a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind.

 *     *     *     *     *     *

" 'It is not necessary that the defendant should anticipate the injury in the precise form as resulted. Nor need the particular consequences have been within the contemplation of the parties.

 *     *     *     *     *     *

" 'In line with our decisions on this subject is the statement: "As regards proximate cause \* \* \* the courts look more for the possibility of a hazard of some form to some person than for the expectation of the particular chance that happened. Accordingly, it is not necessary to a defendant's liability, after his negligence has been established, to show, in addition thereto, that the particular consequences of his negligence could have been foreseen by him; it is sufficient that the injuries are the natural, although not the necessary and inevitable, result of the negligent fault—such injuries as are likely, in ordinary circumstances, to ensue from the act or omission in question." 38 Am. Jur., § 62, p. 714.

" 'Our recent case of Housing Authority of Birmingham Dist. v. Morris, 244 Ala. 557, 566, 14 So.2d 527, otherwise states the applicable rule as follows: If common experience has demonstrated that dangers lurk in the method adopted or in the instrumentality maintained by a person he rests under the obligation of ascertaining the peril and taking precautions to avoid injury therefrom.' (246 Ala. 267–268, 20 So.2d 228.)

"In Alabama Power Co. v. Irwin, 260 Ala. 673, 72 So.2d 300, a man was electrocuted when a metal pipe thirty feet long which he and a fellow worker were removing from a well came in contact with an uninsulated electric wire maintained by the defendant. There, too, defendant urged that its negligence, if any, was not the proximate cause of decedent's death. This court said:

" '\* \* \* One guilty of negligence is held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would at the time of the negligent act have thought reasonably possible to follow, if they had occurred to his mind. Armstrong v. Montgomery Street Ry. Co., 123 Ala. 233, 26 So. 349; Briggs v. Birmingham Ry., Light & Power Co., 188 Ala. 262, 66 So. 95; Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224. \* \* \*' (260 Ala. 678, 72 So.2d 304)

"In Alabama Power Co. v. Smith, 273 Ala. 509, 142 So.2d 228, where a man, standing on the roof of a building being constructed, was electrocuted when the cable of a crane lifting cement to the roof came in contact with the defendant's uninsulated electric wires hanging over the roof, the same argument was made as here that the demurrer should have been sustained. We said:

" 'When Count E(1) in the instant case is compared with Count 1 in Sullivan v. Alabama Power Company, 246 Ala. 262, 20 So.2d 224, it appears to us that Count E(1) is sufficient. In the Sullivan case, this court held Count 1 to be sufficient and on that authority we hold the instant Count E(1) also to be sufficient.' (273 Ala. 516, 142 So.2d 234.)

\* \* \* \* \* \*

"In Goodwyn v. Gibson, 235 Ala. 19, 177 So. 140, a count alleged that the plaintiff, while riding a bicycle, ran into an obstruction in the street while evading a negligent automobile driver; and the demurrer raised the points that the alleged negligence of the defendants was not the proximate cause of plaintiff's injuries, and that his injuries and damages were caused by the negligence of some third person and were not the proximate consequence of the alleged negligence. The demurrer was overruled and we affirmed, holding in part:

" '*When a person by his negligence produces a dangerous condition of things, which does not become active for mischief until another person has operated upon it by the commission of another negligent act, which might not unreasonably be anticipated to occur, the original act of negligence is then regarded as the proximate cause of the injury which finally results.* Clendenon v. Yarbrough, et al., 233 Ala. 269, 171 So. 277.' (235 Ala. 21, 177 So. 142.)" [Emphasis ours]

It is our opinion that the *Guy* case answers, in large measure, appellee's contentions.

Moreover, we think the views we expressed on the issue of proximate cause in our very recent decision in Shepherd v. Gardner Wholesale, Inc., 288 Ala. 43, 256 So.2d 877 (1972), are most pertinent to the instant case. There we held:

"In Chambers v. Cox, 222 Ala. 1, 3, 130 So. 416, 418, we said:

" ' * * * "As a general rule, it may be said that negligence, to render a person liable, need not be *the sole cause of an injury*. It is sufficient that *his negligence, concurring with one or more efficient causes*, other than plaintiff's fault, *is the proximate cause of the injury*." * * *'

"So also in this case, *negligence may have existed on the part of others which concurred with the alleged negligence of the appellee to proximately cause the appellant's injury*. To recover, the negligence, causing the appellant's injury in this case, need not be *the sole proximate cause* of her injury, *but only its proximate cause*, if she was free from negligence contributing thereto. The charge misstates the law and giving it requires a reversal of the case." [Emphasis ours]

Was there any negligence on the part of defendant, in the instant case, which may have concurred with one or more other efficient causes, other than plaintiff's fault, which could be found by the jury to have been *the* proximate cause of plaintiff's injuries? We think so.

Taking that evidence most favorable to plaintiff: the pole was installed 27 years previously and may have been a "used" pole then; the pole was old, hard, brittle, and incapable of supporting little more "pull" than the 90 pounds then being exerted upon it by the wires; it was installed at a lower height out on the street than proof of safety standards showed it should have

been installed; there was no periodic inspection though safety standards required this to be done periodically; standards also required poles close to streets, which might fall in the traveled way, to be periodically "inspected" and "maintained" in a safe condition; the pole broke as a result of the wires being struck by a vehicle which, in combination with the brittle, hard, defective condition of the pole, caused it to snap, and the wire to sag down across the traveled portion of the highway.

Thus, the jury could find there was a breach of the duty to keep the wires from falling on or in the traveled portion of the public street. It was not unforeseeable that traffic on the highway would be forced to stop (as Grimes' car did, on his being flagged down by the "Good Samaritan" Waco Taylor), and being unable to go under the wire without hitting it with his aerial; and, that upon his stopping, an ensuing collision might (as it did) take place between his vehicle and the following vehicle of the Lawsons, as a proximate result of which someone (in this case Mrs. Lawson) might be injured.

Therefore, we say the defendant could reasonably anticipate that poles in such condition as this one was, unmaintained and uninspected, might be broken, fall onto a public highway and alone, or in combination with other circumstances, cause injury to a third party.

As we have thus concluded, we think the issue of primary negligence and proximate cause were both properly submitted to the jury. It is our conclusion that the trial court was in error in granting a new trial on account of its opinion that defendant was entitled to the affirmative charge, because there was an intervening efficient cause which proximately caused the plaintiff's injury.

Nevertheless, we are still faced with the question as to whether the trial court was correct in granting a new trial on some other grounds of the motion for a new trial.

This court has repeatedly held that the action of a trial court, in granting a new trial, is sustainable if there is any ground of the motion justifying the action, regardless as to whether the ruling may have been rested on an improper ground. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224 (1945). 2A Ala. Digest Appeal & Error ☞854(6).

In Jefferson Iron & Metal Company v. Bethune, 263 Ala. 131, 81 So.2d 674 (1955), we held:

"The rule is well established that our review of the action of the trial court in granting a motion for new trial is not limited to the grounds on which the motion was granted. *It is open to appellee to show error in the trial on any other of the grounds assigned in the motion.* Rhodes v. Roadway Express Co., 261 Ala. 14, 73 So.2d 740; Montgomery City Lines v. Scott, 248 Ala. 27, 26 So.2d 200; Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224." (Emphasis ours)

The only reference in appellee's brief to any grounds of the motion for new trial, other than the questions of negligence and proximate cause, is the following, viz:

"The Court bottomed its error on its refusal to give defendant's requested Charge No. 10. The Court could very easily have granted the motion in general terms whereby it might then be considered to have been granted on any ground specified in the motion. Among other grounds 3 and 4 would have come into consideration. It required [sic] no further argument to demonstrate that the motion could have been granted on these grounds without question of error. This Court will not reverse."

Grounds 3 and 4 of the motion for new trial are that the verdict of the jury is contrary to the great preponderance of the evidence, and contrary to the weight of the evidence.

Over fifty years ago, this court rendered a decision in Cook v. Sheffield Co., 206 Ala. 625, 91 So. 473 (1921), which is determinative of the issue as to whether we can affirm the trial court's decision on the two mentioned grounds. Mr. Chief Justice Anderson, writing for the court in that case, had this to say in an almost identical situation, viz:

"It is undoubtedly true that we have held that in passing upon the action of the trial court in granting a new trial this court will not confine the inquiry to the sole ground upon which the motion was granted, but will affirm its action, notwithstanding it was not justified under the ground assigned, if it affirmatively appears from the record that it should have been granted upon some other ground included in the motion. It is also well settled that in reviewing the action of a trial court in granting a motion for a new trial this court indulges in the same presumption in favor of the ruling as when the motion is denied, and will not disturb the ruling unless it appears that the great weight of the evidence plainly and palpably supported the verdict that was so set aside. *And if the trial court does not specify the ground, and the motion contains the ground that the verdict was contrary to the evidence, this court can infer that the ruling was based on said ground,* and will indulge the presumption as above set forth in favor of said judgment, *but it is neither sound nor logical to indulge such a presumption in favor of the trial court when its judgment negatives the fact that the ruling was based upon this ground of the motion.*

"The case of Choate v. A. G. S. R., 170 Ala. 590, 54 South. 507, is not in conflict with the present holding. There the court held that the trial court erred in granting the new trial upon the ground assigned, but said action was error without injury, because the entire record affirmatively showed that the defendant was entitled to the general charge as to the only count

that went to the jury and upon which the plaintiff got a judgment, and that the verdict was properly set aside, just as we would hold in the present case that the trial court should not be reversed for granting the new trial notwithstanding the erroneous reason given therefor, if the entire record showed that the defendant was entitled to the general charge. *Nor can we, as an original proposition, say that the verdict was so contrary to the evidence that the same should have been set aside for the purpose of affirming the trial court in granting a new trial upon another ground.* Had the trial court placed its action on this ground or had not placed it on another ground, then we could apply the presumption indulged in its favor in passing upon its action, but, having negatived action upon this ground of the motion, there is no room for the indulgence of the usual presumption when a new trial is granted or refused because the verdict is contrary to the evidence.

"The judgment of the circuit court is reversed, the judgment setting aside the original judgment is vacated, the original judgment is reinstated, and the cause is remanded.

"Reversed and remanded."

Having thus concluded, as this court concluded in *Cook*, that the defendant was not entitled to the general affirmative charge, and being unable to indulge either the usual presumptions, or to place the trial court's action on another ground, it must result that the judgment of the trial court must be reversed, the judgment setting aside the original judgment must be vacated, the original judgment reinstated, and the cause remanded for entry of a judgment in conformity herewith.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, COLEMAN and McCALL, JJ., concur.