THOMPSON, Judge.
Eobert W. Allen appeals from an order of the Mobile Circuit Court granting Mir-anka Fountain a new trial in a civil action arising from business activities of the Mobile School of Massage Therapy, Inc. (“MSMT”). We reverse and remand with instructions.
In September 2000, Allen, through counsel, sued Fountain and William A. Morey, alleging that Morey had sold Fountain shares of stock in MSMT that were actually owned by Allen and that Fountain had subsequently sold the assets and stock of MSMT to a third party without Allen’s consent and had not compensated Allen for the sale of the stock or the assets. Allen sought damages on theories of breach of contract, breach of fiduciary duty, and conversion. In December 2000, Morey and Fountain, acting pro se, filed a joint an *1106 swer denying the allegations in the complaint and a counterclaim alleging that they had suffered financial losses arising from Allen’s purportedly- “purposeful and malicious” actions to damage MSMT; they later amended their counterclaim to add a breach-of-contract claim. Morey and Fountain later jointly filed a number of motions and responses to motions in the case and jointly filed a witness list in preparation for trial.
A jury trial was held between December 17, 2001, and December 19, 2001, on the parties’ claims. During the trial, the trial court entered judgments as a matter of law on Allen’s conversion claim and on Morey and Fountain’s claim asserting that Allen had damaged MSMT; the remaining claims were submitted to the jury. On December 19, 2001, the jury returned a verdict in favor of Allen on all claims, awarding compensatory damages of $68,000 and punitive damages of $30,000.
After a judgment was entered on the jury’s verdict, Morey, still acting pro se, filed a motion for a new trial; Fountain, who retained counsel, filed a separate motion, seeking a new trial, a judgment as a matter of law, or a remittitur. As grounds for seeking a new trial, Fountain alleged that the verdict was inconsistent and against the great weight of the evidence, that certain jurors had fallen asleep during the trial, and that she “was not allowed to speak on her own behalf while proceeding in the trial pro se.” Morey subsequently filed a suggestion of bankruptcy, and all proceedings as to him have been automatically stayed. On April 18, 2002, after a hearing on Fountain’s postjudgment motion, the trial court entered an order granting a new trial, stating as follows, in pertinent part:
“Upon review of several excerpts from the record and after careful consideration of the argument of counsel for defendant Fountain and for plaintiff, the court is of the opinion that in one or more instances during the trial Fountain was denied the opportunity to speak for herself and therefore, to avoid an unconstitutional infringement upon the rights of this party to be heard on her own behalf, ... a new trial must be granted as between plaintiff and defendant Fountain.”
Allen’s appeal to the Supreme Court from the trial court’s interlocutory order granting a new trial, which order is appealable as of right (see § 12-22-10, Ala.Code 1975), was transferred to this court, pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Allen contends that the trial court abused its discretion in granting Fountain’s motion for a new trial; he contends that the record is devoid of evidence tending to show that Fountain was denied the right to speak on her behalf. In support of the trial court’s new-trial order, Fountain’s sole contention is that she was improperly denied the ability to represent herself. Although “ ‘[i]t is open to appellee to show error in the trial on any other of the grounds assigned in the motion,’ ” Lawson v. General Tel. Co. of Alabama, 289 Ala. 283, 291, 267 So.2d 132, 139 (1972) (quoting Jefferson Iron & Metal Co. v. Bethune, 263 Ala. 131, 132, 81 So.2d 674, 675 (1955))(emphasis omitted), Fountain has not argued that any of the other grounds presented in her motion would support the new-trial order in this case. Thus, the sole question presented for review iá whether the trial court abused its discretion in ordering a new trial on the -alleged basis that Fountain “■was not allowed to speak on her behalf’ during the first trial. See Vaughan v. Oliver, 822 So.2d 1163, 1170 (Ala.2001) (the grant or denial of a motion for a new trial is within the sound discretion of the trial court, and its ruling on such a motion will *1107 not be reversed unless that ruling constituted an abuse of discretion).
Under Rule 59(a), Ala. R. Civ. P., a new trial in a civil action may be granted for any reason for which new trials were granted in actions at law in Alabama before the adoption of the Alabama Rules of Civil Procedure, including the reasons stated in § 12-13-11, Ala.Code 1975. See Scott v. Farnell, 775 So.2d 789, 791 (Ala.2000). Among these grounds is “[e]rror of law occurring at the trial and properly preserved by the party making the application.” § 12 — 13—11 (a)(8), Ala.Code 1975. In other words, a trial court does not err in granting a new trial if it properly finds (1) that an error occurred in the preceding trial, and (2) that the party seeking the new trial “properly preserved” the issue.
The record does not contain a transcript of the entire trial, but is limited to the proceedings during voir dire, the parties’ sidebar conferences with the trial judge before and during the trial, and the parties’ arguments on dispositive motions presented during the trial. At the beginning of the trial, with all of the parties present, the trial court asked Morey, “[A]re you going to be the principal spokesman here?” Morey answered in the affirmative. When asked whether Morey would “do the questioning ... on behalf of [himjself and Ms. Fountain,” both Morey and Fountain responded “Yes.” The trial court then explained to the parties that he would “allow a spokesman for each side — the attorney on the Plaintiffs side, Mr. Morey on the Defense side — to give [an] opening statement, to last not more than ... five minutes.” The trial court stated that testimony would follow opening arguments, and at the end of the testimony a period would be allotted for closing arguments, noting that “Plaintiffs side goes first and last” and “The Defense goes in-between.”
Later, during voir dire, the trial court stated that Fountain and Morey “will be representing themselves,” and that “Morey will handle the interrogation of any witnesses.” The trial court also asked Morey to identify for the jury the people who might be called as witnesses, and those people were identified as being “potential witnesses for the Defense.” The trial court then allowed questioning of the veni-re by Allen’s attorney and by “the Defendants ... through Mr. Morey,” after which a jury was struck. Although Fountain was present at all of these proceedings, she did not object to the trial court’s treating of Morey as representing her interests as well as his own.
The reporter’s transcript resumes during a sidebar conference at the close of Allen’s case, at which time Allen’s counsel filed various dispositive motions, which were denied. The trial court then asked whether “the Defense, the Defense being on behalf of William Morey and Miranka Fountain, ha[d] any motions to file.” At that time, Morey responded that he had not had time to put together any motions, but that he would object to Allen’s introduction of corporate statutes that had not been introduced up to that point as a basis of liability. The trial court then asked Morey to explain the factual basis of Mor-ey and Fountain’s counterclaim, and Mor-ey again spoke on behalf of the two defendants. The trial court asked whether MSMT had been sold in July, and Fountain answered, ‘Yes, it was”; the trial court then asked what services Fountain might have been authorized to render and to receive compensation for after that sale, but the trial court expressly directed its question to Morey, noting that “Mr. Morey is handling the presentation for the two of you.” There is no indication that Fountain objected to the trial court’s statement, nor to its subsequent statement that 25 minutes would be allotted to “each side” — and *1108 that she and Morey together were considered one side — for closing arguments.
The transcript then discloses the sidebar conference held before closing arguments and the trial court’s jury charge. During that conference, Morey asked a question concerning when to suggest a dollar figure as damages on the counterclaim, at which time the trial court responded that Morey could present that figure during closing argument just as Allen’s attorney would seek a sum in her “opening argument,” i.e., her initial closing argument. When Morey asked whether he would have an “opening argument,” the trial court responded, “You only get one time,” indicating that there would be no rebuttal argument from the defendants. Morey indicated that he understood, but then said, “Miranka — I’m sorry,” and had a discussion with her off the record. After the discussion, Morey asked whether the jury could be informed that he and Fountain were seeking different amounts, at which time the trial court indicated that Morey could tell the jury how any damages awarded on their counterclaim would be divided between them. The trial court then again told Morey that he would “go at one time” during closing arguments, for a total of 25 minutes. The record contains no statements or objections by Fountain to the trial court’s remarks.
After the jury had entered the courtroom for closing arguments and Allen’s initial closing argument had been presented, the trial court stated that Morey would “address the jury on behalf of himself and Ms. Fountain.” After Morey’s closing argument and Allen’s rebuttal argument, the jury retired briefly, at which time Morey said, “I thought I was going to have two sessions”; the trial court responded, “No, not you. I told you that four times.” Morey then apologized and said that he had “missed it.” He also asked whether it was too late to “submit the amount” of damages requested on the counterclaim, to which the trial court responded that it was, saying, “You have had your time.” Fountain did not lodge any objections to these statements by the trial court.
Because Fountain’s claim that she is entitled to a new trial focuses upon a claimed denial of her right to represent herself by speaking on her own behalf, it is proper to review briefly the general nature of self-representation in civil cases. Under § 10 of the Alabama Constitution of 1901,[1] “no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party,” and state laws governing the practice of law are not to “be construed to prevent any person from conducting or managing his own case in any court in this state.” Ala. Code 1975, § 34-3-19. These constitutional and statutory provisions protect only self-representation by natural persons, and do not allow for representation of separate “legal entities,” such as estates and corporations, by nonlawyers. See generally Ex *1109 parte Ghafary, 738 So.2d 778, 779-81 (Ala.1998).
However, Alabama law is clear that a choice not to obtain a lawyer to represent oneself in a civil action is not a license to ignore rules of civil procedure. “ ‘[T]he operation of the courts of this state is governed by rules which are no more forgiving to a pro se litigant than to one represented by counsel.’” Overy v. Murphy, 827 So.2d 804, 806 (Ala.Civ.App.2001) (quoting Black v. Allen, 587 So.2d 349, 349 (Ala.Civ.App.1991)); see also Bowman v. Pat’s Auto Parts, 504 So.2d 736, 737 (Ala.Civ.App.1987) (noting, in a case involving a pro se defendant, that “all parties, once in court, whether by filing an answer or other pleading, must keep track of their case”).
In this case, neither Fountain nor Morey elected to be represented by legal counsel at trial, but chose to represent themselves; it is also apparent that they agreed between themselves that Mor-ey would act on their joint behalf during the trial proceedings. Alabama law is not sympathetic to claims that such a choice warrants a new trial or other post-judgment relief. For example, in Sangster v. Sangster, 366 So.2d 1136 (Ala.Civ.App.1979), this court considered whether a new trial should be granted to a husband in a divorce action because the husband purportedly “ ‘did not understand the proceedings, did not understand their import as relates to the taking of evidence in [the] cause, and did not have proper and adequate representation.’ ” 366 So.2d at 1138. This court rejected the husband’s claim of error, noting that the husband “chose to proceed in the trial court without the aid of legal counsel” and stating that the husband “cannot now be heard to complain that he was denied adequate representation” because “[a]ny such denial resulted directly from his own volitional conduct.” Id. To like effect are Pride v. Pride, 631 So.2d 247, 250 (Ala.Civ.App.1993), and Sanders v. Sanders, 342 So.2d 380, 382-83 (Ala.Civ.App.1977).
The record on appeal fails to show any instance where the trial court prevented Fountain from taking an active role in presenting her own defense at the outset of the trial. During the conference before voir dire, Fountain did not object to the trial court’s treatment of Morey as representing both Morey’s and her interests, and affirmatively agreed that Morey would act on both his and Fountain’s behalf in questioning witnesses. Moreover, at no time did Fountain indicate any intent to revoke Morey’s authority to act on her behalf, nor did she object to any of the trial court’s references to “the defense” or “the defendants” as being a single unit, with Morey as its representative.
“It is a well-established doctrine that a party may not avail himself of error, if there be error, into which he has led the court; this is called invited error.” Aetna Life Ins. Co. v. Beasley, 272 Ala. 153, 157, 130 So.2d 178, 182 (1961). In this case, Fountain, by remaining silent after affirmatively agreeing that Morey would act as her agent in defending against Allen’s claims, invited any error the trial court may have committed with respect to her right of self-representation. Although Fountain claimed that she was denied the right to speak on her own behalf, the record shows nothing but silence on her part after designating Morey as her agent. As the Utah Court of Appeals has noted, “[^Individuals may represent themselves in civil actions but must do so affirmatively[; t]hey cannot rely on their silence at trial and later raise that silence as a weapon when the results of the trial are unfavorable.” Walker v. Carlson, 740 P.2d 1372, 1374 (Utah Ct.App.1987).
*1110 We cannot conclude that Fountain demonstrated and preserved error so as to warrant a new trial. Therefore, the trial court abused its discretion in granting a new trial. Its order is reversed, and the cause is remanded for the trial court to reinstate the judgment on the jury’s verdict in favor of Allen.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.

. Fountain contends that she also has a federal constitutional right to represent herself in a civil action against her, citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), and McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Neither of these cases espouses a general federal constitutional right to self-representation in civil actions; indeed, both involved alleged denials of the right to self-representation in criminal cases afforded by the Sixth Amendment to the United States Constitution. The United States Court of Appeals for the Fifth Circuit, in Eitel v. Holland, 787 F.2d 995, 998 (5th Cir.1986), held that "the right to represent oneself in a civil case is not one of the fundamental rights protected by the due process clauses of the Fourteenth Amendment,” noting that the Sixth Amendment applies only in criminal prosecutions.