MOORE, Judge.
Karen Day Lawrence (“the wife”) appeals from a judgment entered by the Montgomery Circuit Court (“the trial court”) on January 26, 2012, in her divorce action against Walter Ledon Lawrence (“the husband”).

Facts and Procedural Background

The parties met and started dating in May 2008. At that time, the wife owned her own house, which she estimated was worth almost $250,000, and maintained a portfolio of investments (“the retirement accounts”), which she testified amounted to approximately $415,000, as well as various personal property. According to the husband’s testimony, he owned a 14-acre farm, horses, a share of a financial-planning business, and a portfolio of investments worth approximately $25,000 to $30,000. When the parties met, the wife was paying a mortgage of approximately $900 per month on her house and other household expenses of approximately $2,600 per month, a total of approximately $3,500 per month. The husband was paying a mortgage payment of $1,300 per month, utilities of $500 per month, and the operating expenses of his business at a rate of $2,500 per month.
While they were dating, the parties agreed that they would sell their separate homes and jointly purchase a new home with the proceeds from those sales.[1] The husband testified that, because he maintained livestock on his farm, it was not feasible to sell that property first, so the couple agreed to place the wife’s house on the market first. That house did not sell immediately. In July 2008, the husband, a certified financial planner, suggested to the wife that she transfer her retirement accounts from Maine, where they had been overseen for the previous 15 years, to Montgomery, where he could oversee them as her broker. The wife consented to the husband’s suggestion and signed all the necessary authorization forms. The husband proceeded to invest all the funds from the wife’s retirement accounts in annuities and real-estate-investment trusts, with the exception of $100,000, which was invested in an oil company.
The parties married at the end of September 2008. They went on a honeymoon to Israel and Aruba. In 2009, they also traveled as a couple to Ocala, Florida, for one week and, on multiple occasions, to South Carolina. The wife traveled alone to California on one occasion and, on another occasion, vacationed for 10 days with her sister in Hawaii. The wife’s house did not sell quickly, so the parties maintained two separate households throughout 2009. The husband testified that, as a result of the economic downturn and his frequent traveling, he earned only $77,000 in commissions in his financial-planning business in 2009, which, he said, did not cover the parties’ expenses. The wife was unemployed throughout the parties’ marriage.
According to the wife, in January 2009, the husband informed her that the oil company in which he had invested some of her funds had gone into receivership. Throughout 2009, the husband withdrew $150,000 in funds from the annuities he had established for the wife in order to *725 cover the parties’ living expenses and the operating expenses for his business. The husband and the wife also invested in horses, purchasing two for $25,000 and leasing six others. In November 2009, the husband convinced the wife that they should invest funds in Iraqi dinars; $8,000 of the amount the parties invested came from funds from the wife’s investments. At some point, the wife’s house sold for approximately $190,000; the wife received the proceeds derived from that sale and placed them into a certificate-of-deposit account in only her name.
In January 2010, the wife asked the husband to show her the parties’ income-tax returns for the preceding year. According to the wife, upon her inquiring about the income-tax returns, the husband told her to leave the premises, and, she said, within 72 hours, she left the premises and later moved into an apartment. The wife eventually filed a separate income-tax return for the 2009 tax year, which resulted in a tax liability of approximately $60,000. The evidence indicated that, had the wife filed jointly with the husband, their tax liability would have been approximately $22,000.
The wife filed for a divorce from the husband in April 2010. In her complaint, the wife alleged that the husband had fraudulently induced her into marrying him and that he had taken a large portion of her retirement accounts without permission. The wife requested that she be awarded all the money that she had lost as a result of the husband’s alleged fraud. At the trial on April 5, 2011, the wife testified that she was not making any claim to any of the property the husband had owned before their marriage but that she wanted to be financially restored. The wife testified that she had only approximately $60,000 of the funds from her retirement accounts and a portion of the proceeds from the sale of her home left.
The trial court entered a judgment on September 29, 2011, divorcing the parties. In that judgment, the trial court awarded the wife $150,000, representing the amount the husband had withdrawn from the wife’s annuities, plus $54,000, representing the tax liability that the wife had incurred as a result of those withdrawals. The trial court also awarded the wife $8,000 in Iraqi dinars, which had been purchased with the wife’s funds. The trial court declined to award the wife any amount to compensate her for the funds that the husband had invested in the oil company, which had gone into receivership, or any amount to compensate her for the loss she had suffered on the sale of her house.
On October 28, 2011, the husband filed a postjudgment motion to alter, amend, or vacate the divorce judgment. In that motion, the husband argued that the $150,000 that had been withdrawn from the wife’s annuities had been withdrawn with the permission of the wife and had been used by the parties for their joint benefit to maintain their lifestyle. The husband also argued that the wife had deliberately filed a separate income-tax return for 2009, thereby needlessly increasing her tax burden. The husband finally argued that he could not afford to pay the amounts awarded in the judgment, which he characterized as “alimony in gross.” The wife filed a written response to the husband’s motion.
The trial court conducted a hearing on the husband’s postjudgment motion on January 17, 2012. At that hearing, the husband did not offer any new evidence; instead, he requested that the trial court revise the divorce judgment based on the evidence that had been presented at the trial. On January 26, 2012, the trial court entered a judgment granting the husband’s postjudgment motion and reducing *726 the amount the husband was ordered to pay the wife to $72,000. The trial court reasoned that the wife had had some input into the financial decisions made by the husband and that she had received some benefit and enjoyment from the withdrawal of the funds from her annuities, although neither party had produced evidence of the exact amount that had been used for the benefit of the marriage. The trial court stated in its postjudgment order: “The Court is of the opinion that the [wife] cannot simply walk away from the marriage without sharing some of the responsibility for the action taken.”
On February 7, 2012, the wife filed a motion to set aside the judgment, as amended, so that she could present new evidence to the trial court; the wife also notified the trial court of her intent to appeal the revised judgment. On March 8, 2012, the wife filed her notice of appeal to this court.[2]

Issues

On appeal, the wife argues that the trial court committed reversible error by considering “new evidence” that the husband did not have the means to pay the amounts awarded in the original divorce judgment and would have to file bankruptcy and by allowing counsel for the husband to “testify” as to factual matters not in evidence. The wife also argues that the trial court erred in amending its original judgment based on the oral testimony adduced at the trial.

Discussion

Although we agree with the general principle that a trial court cannot consider new evidence as a basis for amending a judgment, see Tice v. Tice, 100 So.3d 1071 (Ala.Civ.App.2012), we find no merit in the wife’s contention that the trial court improperly amended the judgment based on new evidence in this particular case.
This court has reviewed the transcript of the hearing on the husband’s post-judgment motion, which is 13 pages long. In that hearing, the only arguably “new evidence” introduced consisted of a statement made by counsel for the husband that the husband would have to declare bankruptcy if the judgment remained in place because he did not have the means to pay the amounts outlined in the divorce judgment. However, in its postjudgment order, the trial court stated that the record from the trial contained evidence regarding the ability of the husband to repay the wife, noting that the husband had earned commissions of $77,000 in 2009 and that he also receives $1,900 in monthly retirement benefits from the military. We also observe that the husband testified that his business had improved since 2009. The trial court plainly indicated that it was not convinced that the husband lacked the ability to pay the amounts awarded to the wife in the divorce judgment.
We are to construe judgments so as to uphold them, not reverse them. See Ex parte Snider, 929 So.2d 447, 457 (Ala.2005). We construe the statements made by the trial court in its postjudgment order as foreclosing any contention that it was reducing the award based on new evidence regarding the inability of the husband to pay the original amounts awarded to the wife. Therefore, we decline to reverse the judgment based on the mere fact that counsel for the husband, during the hearing on the husband’s postjudgment *727 motion, raised the possibility that the husband may have to declare bankruptcy if the original award remained in effect.
We also reject the wife’s argument that the trial court was bound by its original judgment because the husband did not introduce any different evidence or make any “compelling” legal arguments for revision. On a motion filed pursuant to Rule 59, Ala. R. Civ. P., in an action tried without a jury, a trial court may amend the judgment or make new findings of fact and direct the entry of a new judgment. Rule 59(a), Ala. R. Civ. P. That decision may be based on any ground previously available for rehearings in suits in equity, id., including the grounds stated in § 12-3-11, Ala.Code 1975. Allen v. Fountain, 861 So.2d 1104, 1107 (Ala.Civ.App.2002). Rule 59 motions specifically allow a trial court sitting without a jury to reconsider the evidence upon which its judgment is based or to rehear arguments regarding the legal considerations underlying that judgment. See Holland v. Jenkins, 567 So.2d 1347, 1348 (Ala.1990).
In this case, the husband requested that the trial court reconsider its award based on the evidence presented at trial. Although the evidence was somewhat disputed, the trial court, upon reconsideration, determined that the wife had, in fact, had “some input” into the decision to withdraw the funds from her annuities and that she had, in fact, enjoyed the benefit of those funds, which had been used, at least in part, to pay marital debts, to pay for vacations, and to accumulate marital assets. The trial court further reconsidered that the wife had acknowledged at trial that she would have benefited from filing a joint tax return with the husband and that she had made the decision, upon the advice of her former counsel, to file a separate tax return and to incur additional tax liability. Based on its reconsideration of the evidence, the trial court determined that it would be inequitable to require the husband to repay the wife the entire $204,000 associated with the withdrawals from the annuities and that it would be equitable to order the husband to repay only $72,000 of that amount.
We conclude that the trial court acted wholly within its authority under Rule 59 to reconsider the evidence and to adjust its original award according to its reconsidered view of the equities of the case. The wife does not contest the fairness of the ultimate amount awarded or argue that the evidence is insufficient to sustain that specific amount. Therefore, we affirm the judgment.
The husband’s request for the award of attorney fees on appeal is denied.
AFFIRMED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.

. The wife testified that, after the parties had made that agreement and had married, the husband told her that she might lose her house if he declared bankruptcy, which, she said, motivated her to sell her house at a reduced price.

. The fact that the wife’s postjudgment motion, which was filed pursuant to Rule 60(b), Ala. R. Civ. P., remained pending before the trial court when she filed her notice of appeal does not deprive this court of appellate jurisdiction. See Harville v. Harville, 568 So.2d 1239 (Ala.Civ.App.1990).